·. GEORGE W. TUTTLE *vs.* MICHAEL HEAVY and others.

Where real estate belonging to infants is sold by order of the county court, and a bond and mortgage given to the special guardian (who is also general guardian) of the infants, to secure the payment of a part of the purchase money, he has power to sell and assign such bond and mortgage, and can, by such sale and assignment, give the purchaser a perfect title thereto.

No order, from any court, is necessary to enable a guardian to make such an assignment, or to establish its validity.

ACTION to foreclose a mortgage. The mortgage, and the bond collateral thereto, were originally given by the defendant Michael Heavy, to William McCarthy, as special guardian of certain infants, and were claimed to have been assigned to the plaintiff, by said William McCarthy, under and in pursuance of an order made in the county court of Monroe county, by the special county judge.

The defendant Michael Heavy was the only one who appeared and answered. He, by his answer, alleged and insisted, 1. That William McCarthy, as special guardian, had no power or authority to assign, sell or transfer the bond and mortgage set forth in the complaint, or either of them, and that by reason thereof the plaintiff was not the owner thereof, or of the moneys due or to grow due thereon, nor was the said plaintiff entitled to bring any action thereon. That the said bond and mortgage was executed and delivered to the said William McCarthy, as special guardian of Thomas P. McCarthy, Alice P. McCarthy and Dennis McCarthy, infants, who then were and still are under the age of twenty-one years; that at the time of the pretended order of sale of said bond and mortgage to the plaintiff, the said infants were of the ages, respectively: the said Thomas P. of the age of fourteen years, the said Alice P. of the age of about twelve years, the said Dennis about the age of ten years; that neither of the said infants joined in said petition. That the said,

pretended order of sale was granted by George W. Rawson, Esq., special county judge for Monroe county; that the county court of Monroe county was held at that time by the Hon. Jerome Fuller, county judge for said county, and that the latter was not at that time in any way incapacitated from holding said court. 2. And the defendant, for a further and separate answer, alleged that he was not nor is he now indebted to the plaintiff on the said bond and mortgage in any sum whatever; and that there was not on the 1st day of March, 1870, nor at any time since, any sum of money due or owing on the said bond and mortgage to the said plaintiff.

The action was tried at a special term, before a justice of this court, without a jury. When the plaintiff rested, the defendant moved that the plaintiff be nonsuited, and the complaint dismissed on the grounds:

1. That the county court had no power or jurisdiction to order the sale or assignment of the said bond and mortgage; and that said assignment was void and no title passed.

2. That the special county judge had no such power or authority.

3. That the Supreme Court at special term had no jurisdiction of the matter, and could not confirm said sale or assignment, nor confirm the order made by the special county judge, and that the order made at the said special term was void for want of jurisdiction.

4. That no title to the said bond and mortgage ever passed to the plaintiff, and hence he could not maintain this action.

The court denied the motion, and the defendant's counsel excepted.

The defendant then offered to prove: That at the time of the making of the said order, by the special county judge, the county judge was in the county of Monroe, able to attend to business, and not in any way incapaci-

tated therefrom. This offer was overruled by the court; to which ruling and decision the defendant's counsel excepted.

The cause was then submitted, when the said court found as facts: That on the 3d day of March, 1865, the defendant, Michael Heavy, made and executed his bond in the penal sum of $2700, conditioned to pay William McCarthy as special guardian of William P. McCarthy and others, his infant children, of whom the said William McCarthy was also general guardian, duly appointed by the surrogate of the county of Monroe, the sum of $1350.50, in five equal installments with semi-annual interest on all sums unpaid, the interest to commence April 1, 1865; that said sum was made payable to said William McCarthy, as special guardian aforesaid, his heirs, executors, administrators or assigns; and that at the same date with said bond, the said Michael Heavy executed a mortgage, under his hand and seal, of the premises mentioned in the complaint, to secure the payment of said $1350.50, on like terms and conditions as mentioned in said bond, and then and there delivered said bond and mortgage to the said guardian *ad litem;* that the mortgagor has paid on account of the principal the sum of $770.25, leaving due and unpaid, on account of said principal, the sum of $579.75, and interest on that sum from and after October 1, 1869; that said mortgage was recorded in Monroe county clerk's office, March 13, 1865, in liber 120 of mortgages, at page 2. That on the 4th day of December, 1868, the said bond and mortgage, and the debt due and to grow due, was duly sold, assigned and transferred to the plaintiff by the said guardian *ad litem*, by an assignment duly signed and sealed by said guardian *ad litem*, and that the plaintiff is the lawful owner and holder of said bond and mortgage; that said assignment was duly recorded in said clerk's office in liber 7 of assignments of mortgages, at page 363, December 17, 1868; that the county court

Tuttle *v.* Heavy.

of the county of Monroe authorized and directed said assignment, and that the Supreme Court has sanctioned the same.

To all of which said findings of fact the defendant excepted.

The said court also found as conclusion of law: That the plaintiff is entitled to foreclosure and sale of the mortgaged premises and payment of the debt and interest out of the proceeds of said sale, with costs of the action, and an execution against the said Michael Heavy for any deficiency of said debt and interest that said proceeds may leave unpaid, and that the other defendants be barred and foreclosed of all rights and interest in the mortgaged premises, except as to any surplus that may remain out of said sale after paying said debt and costs, and the expenses of the referee in selling and conveying said mortgaged premises to the purchaser; and the said court ordered judgment accordingly. From the judgment so entered, the defendant appealed.

*J. H. McDonald*, for the appellant.

I. The bond and mortgage in suit were given to secure part of the purchase money on a sale of the real estate of William P. McCarthy and others, infants, ordered to be sold by the county court of Monroe county; and were part of the proceeds of the real estate so sold. The proceeds of the real estate so sold are to be deemed real estate of the same nature and character as the property sold. (3 *R. S.* 276, § 110, *5th ed.* 1 *Duer*, 286.) This is the character and nature of the proceeds, during the minority of the infants. The object of the statute was to preserve, during the infants' minority, the character of the property in reference to the statutes regulating descents and distributions. (11 *N. Y.* 544. 3 *Sandf. Ch.* 456–464.) Now, if this doctrine be true, how can the special guardian, appointed only for the purpose of making the sale; or, even

the general guardian of the infants, at his own volition or option, change the nature or character of these proceeds, and so to divest them of that character which the law has impressed upon them ? If he can, then every guardian can make a statute for his own government in the management of his ward's estate, and very much to the detriment of contingent heirs, provided the ward should die before attaining his majority. Suppose that the infants interested in this bond and mortgage had died before attaining their majority, then what would become of the bond and mortgage? Assuredly, if no valid disposition or sale of it had been made, it would descend as real estate to the heirs at law. If the disposition now made of the bond and mortgage is held to be valid, it certainly defeats the object of the statute, and renders the latter a dead letter, and of no force or effect whatever.

II. The general guardian, as such, had no right whatever to this bond and mortgage, except so far as to receive the interest accruing thereon. He had not given security on real estate, nor is there any evidence showing that he gave any security, except his mere personal bond or obligation. (*Laws* 1848, *p.* 407, § 8. *Sup. Court Rules*, 70, 71. 1 *John. Ch.* 561.) The only evidence of any security having been given is the records of the surrogate, showing that McCarthy, on being appointed general guardian, filed his bond, as such. This bond and mortgage was not personal property such as the general guardian had power to dispose of without order or authority.

III. If the above propositions are true, then it is necessary, before the guardian can sell or dispose of this property, that he first obtain authority; and the only source of authority for such purposes is the Supreme Court. The county court has no jurisdiction whatever, except as provided by statute; and the statute confers no power on the latter court to interfere in any way with the proceeds of such sales, except to direct their investment. (*Code*, § 30,

Tuttle *v.* Heavy.

*subd. 6.* 1 *Lansing*, 90.) It follows, therefore, that the order made by the special county judge is absolutely void, and of no force or effect whatever. He had no jurisdiction to make such order, either as special county judge, county judge, or as holding a term of the county court. The jurisdiction of the special county judge is limited and special. The statute creating the office clearly and fully defines its powers. (*Laws of* 1864, *ch.* 368, *p.* 860.) But admitting, for the sake of the argument, that acting in the capacity of county judge, holding term, he had power to make such an order, still he could not legally make it, if the county judge was within the county, and in no way incapacitated. Hence the offer made by the defendant was competent, and should have been allowed.

IV. If there was no valid order directing the sale and transfer of this bond and mortgage, then I contend that the Supreme Court could not, by *ex parte* order, confirm such sale or transfer, or authorize the entry of any order having the effect of rendering valid and legal that which was before a perfect and absolute nullity. This is the very thing sought to be done in this case by the order of confirmation. We see that the order of the special county judge is absolutely void, and no title could or did pass to the plaintiff by virtue of it. Then how could the Supreme Court confirm this proceeding?

I admit the latter court has power, in all cases of infants' estates, their sale and disposition, the disposal and investment of the proceeds, &c.; but I submit that even that court has no inherent jurisdiction, and none unless the facts conferring it are properly before it, and only then to the extent provided by statute. (6 *Hill*, 416. 4 *N. Y.* 257. 10 *Barb.* 555.) It cannot be contended that any jurisdictional facts were before the Supreme Court when the order of confirmation was made. This order was based solely on the petition. If there were any reasons existing why the sale of the bond and mortgage should be

made, none whatever appeared. There was nothing in fact, before the court, except the statement contained in the petition last referred to; and of course that contained no fact upon which the court could act. The statute requires that the facts and circumstances which render a sale necessary and proper shall be before the court before any order can be had in the premises. (2 *R. S.* 195, § 175. 1 *Hopk. Ch.* 122.) This not being done, and no jurisdictional facts appearing before the court, the order confirming the sale of the bond and mortgage was void, and hence gave no title to the plaintiff. Therefore, the plaintiff having no title, could not foreclose the bond and mortgage, or maintain any action upon either against the defendant.

V. The court erred in refusing to grant the motion for a nonsuit to the plaintiff, and dismiss his complaint; and also erred in its findings of fact and conclusions of law.

*Edward Webster*, for the respondent.

The money is shown in the whole case to be due and owing, and the only real question on appeal is as to whether the plaintiff is the owner of the bond and mortgage, and entitled to recover.

I. A mortgage, both at law and in equity, is a mere security for the payment of money. The mortgagee has but a chattel interest, which will pass by delivery, even without writing. (*Wilson* v. *Troup*, 2 *Cowen*, 231. *King* v. *Merchants' Exchange Co.*, 5 *N. Y.* 547. 4 *Abb. Dig.* 55, § 120.) The mortgage, on its face, was made payable to the mortgagee and his assigns; and hence gave authority *per se* for assignment and sale. No order of any court was necessary for its transfer, except for the purpose of protecting the guardian and his sureties, as against the infants; and is of no consequence in any event to any other party. The interest of the infants themselves is in the money secured to be paid by the mortgage; and it makes no difference to them, whether it comes to the hands of

Tuttle *v.* Heavy.

their guardian from the mortgagor, or from an assignee of the mortgagee. The infants can make no objection to the source of its receipt, and *a fortiori* as to third persons. The mortgagor owes, and is bound to pay, to the "mortgagee or his assigns;" and the special guardian and his sureties are responsible to the infants for any waste of the estate. The question, therefore, by the defendant's counsel, as to how much the plaintiff paid for the bond and mortgage, is impertinent, and the answer, in which the defendant can have no interest, was properly excluded. The bond, mortgage and assignment, were necessary documentary evidence in any aspect of the case, and the objection to their admission properly overruled. The remaining documentary evidence. (if the foregoing views are correct,) is mere surplusage, and its admissibility can therefore hurt nobody. Where harmless evidence is introduced, and it cannot by a legal possibility affect the verdict, the error may be disregarded. (4 *Abb. Dig., tit. New Trial,* § 158, *and cases cited.*)

II. The impress of reality on the proceeds of sale of an infant's real estate is merely to protect the rights of his legal representatives; and deprive him (the infant) of the power of testamentary disposition under age, and for no other purpose. (2 *R. S., marg. p.* 195, § 180. *Forman* v. *Marsh,* 11 *N. Y.* 548.) The impression of realty is on the money secured to be paid by the mortgage, and not on the mortgage itself; and hence attaches to the money received from the assignee, but does not follow the instrument into his hands. So far as the infants are concerned, the bond and mortgage have performed their office; and the plaintiff holds them as security for the repayment of his money. 1. The county court is a court of limited jurisdiction, but it has full chancery powers so far as that jurisdiction extends; and among these powers is jurisdiction over the sale of infants' real estate situated within the county, (*Code,* § 30, *subd.* 6; 2 *R. S. marg. p.* 194, *et seq.*;)

and the court, having acquired jurisdiction, has the necessary powers over the persons and the subject matter of the action, carrying with it as a consequence, the power to direct a transfer and assignment of the security, and an accounting for the proceeds. (2 *R. S. marg. p.* 195, § 179. *Pardee* v. *Van Anken,* 3 *Barb.* 534.) The county court had authority therefore to direct the assignment and transfer of the security, and the objection to the order was properly overruled. That order was an order of the court—not of a judge—and cannot be inquired into or impeached collaterally. In a proceeding on behalf of the infants directly to vacate the order, or for other relief, only, can its validity be questioned. (*Cole* v. *Stafford,* 1 *Caines,* 249. *Hoyt* v. *Gelston,* 13 *John.* 139.) The offer to prove that the county judge was in the county, &c., on the part of the defendant, was properly excluded, and the order of the county court being valid, the order of confirmation is mere surplusage, and could injure no one.

III. It is an undeniable proposition that the Supreme Court, as a chancery court, has general jurisdiction over the estate of infants. It can change real estate into personal, and *vice versa,* and can order a sale or transfer of the securities in the hands of a special guardian. (*Mills* v. *Dennis,* 3 *John. Ch.* 370, *and cases cited.* 3 *Abb. Dig., tit. Infant,* 344.) The court can confirm an unauthorized assignment and transfer of the securities made by the special guardian in good faith; and an order entered *nunc pro tunc* will cure the defect and promote the ends of justice. The defendant has no cause to complain of such an order, or of leave granted to plead it in a supplemental complaint, on notice, since all his costs have been paid, and the parties to all intents and purposes stand before the court as in a new action. The order of the Supreme Court was not a confirmation of the county court order, but a confirmation, *nunc pro tunc,* of the assignment and sale. All

Tuttle *v.* Heavy.

other matter in the order is mere recital for the information of parties, and not of the essence of the order itself.

IV. The defendant's position is untenable, both in equity and law. More than half the money on the mortgage had been paid to the guardian before the assignment, and two payments of interest to the plaintiff, since that date; and the balance was all due and payable before the commencement of the action. If the mortgage had not been assigned and the defendant had fulfilled his obligations, all the money would have been paid by him into the hands of the guardian. Why then does he not bring the money into court and offer to pay his just and honest debt to whom it may concern, instead of standing on the defensive, and refusing payment at all? The guardian has received his money on the bond and mortgage from the plaintiff, and he and his bail are responsible for it to the infants. Let the defendant then pay his debt by refunding it to the plaintiff. No one will deny the power of the Supreme Court to deal with the person and estate of infants, and to protect their rights. (*In Re Frits,* 2 *Paige,* 374. *Wilcox* v. *Wilcox,* 14 *N. Y.* 575.) The decree of that tribunal will also protect the defendant. Why then should he resist the payment of his debt by voluntarily appearing as champion for the infants, instead of setting himself right before the court by bringing in for its disposition the money which he has long since unjustly refused to pay?

*By the Court,* JOHNSON, J. There is no merit in this appeal. The only question raised by the pleadings, or upon the trial, was in respect to the plaintiff's title to the bond and mortgage by means of the assignment.

The precise question was decided in *Field* v. *Schiefflelin,* (7 *John. Ch.* 150.) That was the case of an assignment of a bond and mortgage by a guardian, before any payments had been made upon them, and before they had become due. And it was held that the guardian had the

right to sell the choses in action, and personal property of his ward, and convert them into money, and could give the purchaser a perfect title thereto by such sale and assignment. It was further held, in that case, that even the ward could not question the validity of the sale and the title of the assignee, or prevent the payment of the money to him on the bond and mortgage; unless he could show fraud and collusion between the guardian and the assignee, against him or to his prejudice. The case is on all fours with this, except, that in this case there is no question of any collusion.

No order from any court was necessary, to enable the guardian to make the assignment, or to establish its validity.

The judgment of the special term must therefore be affirmed, with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, May 1, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]