Thomas W. Wilson, surviving partner, *vs.* William Richards and others.

October 4, 1881.

**Change of Venue—Discretion of the Court.**—The granting or refusing of an application for an order to change the place of trial from the county in which the action is brought to another county, on the ground of convenience of witnesses, is largely in the discretion of the court to which the application is made, and will not be reversed by this court unless there appears to have been an abuse of discretion.

**Same—Notice to Co-defendants of Application.**—Such change may be made upon the application of a part only of the defendants who defend, but the others should be notified of the application, so that they may have an opportunity to be heard. If, however, a trial has been had in the county to which the removal is made, without objection from the defendants not notified, the plaintiff will not be heard afterwards to raise the objection.

v.28—22

| 28 | 337 |
| 54 | 78 |
| 28 | 337 |
| 55 | 481 |
| 28 | 337 |
| 61 | 293 |

**Partnership—Power of Partner to Renew and Indorse Note in Name of Firm.**—A partner who has given his individual notes, payable to the order of the firm of which he is a member, for a debt contracted in the firm business, due by him to the firm, has power, by virtue of the implied agency arising from the partnership relation,—the note having been indorsed and discounted by the firm, and the proceeds used in the partnership business,—to renew the note and the firm's indorsement thereon, so as to bind the other members of the copartnership in favor of the indorsee of the renewed paper to the ordinary conditional liability of indorsers thereon, notwithstanding the new paper was indorsed in the firm name by the maker, and delivered by him directly to the indorsee.

**Same—Third Party bound by Notice of Limited Authority of Partner.** But it is competent for partners, by agreement among themselves, to limit the authority to indorse notes in the firm name to particular members of the firm, so as to bind a third party who accepts the firm's indorsement, made by a partner in violation of the agreement after notice of the agreement, and that the firm will not be bound by it.

**Notary's Certificate of Protest and Mailing Notices—Evidence of Non-Receipt of Notice.**—The due depositing in the post-office, properly directed, postage paid, of notice of presentment, demand, non-payment, and protest, stands as and for notice to the indorser, whether the notice be actually received or not; and it is error, for the purpose of contradicting the notary's instrument of protest accompanying the note, to admit evidence of the non-receipt of the notice, not accompanied with evidence tending to show that the notice was not in fact deposited in the post-office, as certified by the notary; and such evidence of non-receipt of the notice, standing alone, is incompetent to go to the jury.

Appeal by plaintiff, as surviving partner of the partnership firm of Bank of Minneapolis, from an order of the district court for Scott county, *Macdonald,* J., presiding, refusing a new trial. The action was commenced in the district court for Mower county against William Richards, William A. Richards, D. L. How, H. B. Strait, Edwin French and J. A. Wilder, late copartners composing the firm of Richards, Wilder & Co., on two promissory notes made by William Richards to the order of Richards, Wilder & Co., and indorsed in the firm name. All the defendants answered, except William Richards. The defendants William A. Richards and French each answered separately, by a separate attorney, and each denied that he was a part-

ner in the firm of Richards, Wilder & Co. On motion of defendants How, Strait and Wilder, a change of venue to Scott county was granted by *Page,* J.

*Shaw, Levi & Cray,* for appellant.

A motion for a change of venue must be made by all of the defendants. *Sailly* v. *Hutton,* 6 Wend. 508; *Legg* v. *Dorshein,* 19 Wend. 700; *Merrill* v. *Shaw,* 5 Minn. 113 (148;) *Rupp* v. *Swineford,* 40 Wis. 28.

*Henry Hinds,* for respondents, cited, as to application of partnership funds by partner to payment of his private debt, *Rogers* v. *Batchelor,* 12 Pet. 221; *Selden* v. *Bank of Commerce,* 3 Minn. 108 (166;) *Livingston* v. *Roosevelt,* 4 John. 251.

CLARK, J. This is an appeal from an order of the district court of Scott county denying the plaintiff's motion for a new trial. The action was brought in the county of Mower, and, on the application of the defendants How, Strait and Wilder, was removed by order of that court to Scott county. It is claimed in behalf of the plaintiff that the order of removal was erroneous, and that it is properly reviewable on this appeal; both of which positions are contested by the defendants. In *Lehmicke* v. *St. Paul, S. & T. F. R. Co.,* 19 Minn. 464, the court reviewed such an order on an appeal from an order denying a motion for a new trial, and in *Curtis* v. *St. Paul, S. & T. F. R. Co.,* 20 Minn. 28, the same practice was pursued. While a review in this manner may not be quite logical, it is convenient and calculated to end litigation, and we think the practice which has obtained had better not be disturbed.

Upon the merits, it appears that three of the six defendants resided in Mower county. The suit was, therefore, properly brought in that county, and the only ground upon which the motion could have been properly granted was that the convenience of witnesses and the ends of justice would be promoted by the change. This is a matter which must rest largely in the discretion of the court to which the application is made. We have looked carefully into the affidavits used on the motion, and, although there was not a very strong case for removal, we are not prepared to say that the granting of the order was an abuse of discretion. It is objected by the plaintiff that the defend-

ants, all of whom answered except William Richards, did not join in the application. Two of the other defendants consented, in writing, to the change. It does not appear that the defendant French, who answered, had any notice of the application. The statute does not in terms require the defendants to join, and the ends to be promoted by the change, viz., the convenience of witnesses and the ends of justice, do not depend at all upon it. All the parties have a right to be heard, because it is the general convenience that is to be consulted. It would seem, therefore, that defendants not joining in the application, or expressly assenting thereto, should have notice of the application, so that they may be heard. But the defendant French, the only one not on record as favorable to the change, is not before us complaining of it, and there is nothing to show that it was not satisfactory to him. We cannot, therefore, say that the order of removal should not be allowed to stand.

The suit is brought upon two promissory notes made by William Richards, payable to the order of Richards, Wilder & Co., of which firm the maker and the other defendants are alleged to be members, and indorsed to the plaintiffs. Demand of payment of the maker at maturity, non-payment, and due notice thereof to Richards, Wilder & Co. are alleged in the complaint and put in issue by the answer. To prove the issue, the plaintiffs offered in evidence the instruments of protest of a notary public accompanying the notes, which, after stating the presentment, demand and refusal, and protest, certified that at the proper time "due notice of the foregoing presentment, demand, refusal, and protest were put in the post-office at Minneapolis, and directed, postage prepaid, as follows: Notice for William Richards, directed Austin, Minn.; Notice for Richards, Wilder & Co., directed Shakopee, Minn.; each of the above places being the reputed place of residence of the person to whom the notice was directed." Objection is taken to the form of the certificate in respect that it states that "due notice was put in the post-office," and not that he, the notary, put the notice in the post-office. But we think the language sufficient. It would be a gross dereliction of official duty for the notary to certify to a fact which was not within his personal knowledge.

The instruments of protest were received, and the plaintiffs rested their case, so far as relates to this point, upon them alone. The place of business of the firm was Shakopee, and How, Wilder and Strait resided there; the former two at the time having the charge of the business and receiving the mail for the firm. William Richards resided at Austin. The notes were payable at the plaintiff's bank in Minneapolis. How, Strait and Wilder testified, under the objection and exception of the plaintiff's counsel, that they never received the notices of protest,—some of them with more positiveness than others,—and the court, upon this evidence only, submitted it to the jury to say whether the notices were in fact mailed, to which the plaintiff excepted. We think this was erroneous. The statute provides that "every notary public, when any bill of exchange or promissory note is by him protested for non-acceptance or non-payment, shall give notice thereof in writing to each party protested against, immediately after such protest is made, and such notice may in all cases be given by depositing the same in the post-office, postage paid, and directed to the party protested against, at his reputed place of residence; and the notary shall, in such instrument of protest, certify to the time and manner of service of such notice upon the several parties protested against." Gen. St. 1878, c. 26, § 7. Under this provision, notice is not required to be brought home to the indorser; but diligence in attempting to give it, of a certain specified degree and character, viz., the depositing the notice in the post-office, properly directed, postage paid, stands as and for notice, whether it ever reaches the indorser or not. This is the rule of the law-merchant, as we understand it, enacted into a statute.

The next section provides that the notary's instrument of protest accompanying the note "shall be received in all the courts of the state as *prima facie* evidence of the facts therein certified, but any party may contradict by other evidence any such certificate." But evidence of the non-receipt of the notice is, standing alone, incompetent to contradict the certificate. It might be competent or corroborating evidence if there were any testimony tending to show that the notice was not in fact deposited in the post-office, but not otherwise. If mere evidence of the non-receipt of the notice would justify the

jury in finding the fact against the *prima-facie* case made by the certificate, then it would be in the power of the jury to cast all the risks arising from delinquencies or accidents in the post-office department upon the holder of the paper, which is contrary to the design and purpose of the statute. One jury might find one way upon it, and another the other way, so that practically there would be no certain established rule on the subject. The only way in which the holder could insure a reasonable degree of certainty in the matter would be to forego the provisions of the statute and of the law-merchant in regard to depositing the notice in the post-office, and send it by messenger. A vast amount of the business of the country is transacted by the instrumentality of commercial paper negotiated at great distances from the maker, and if the certificate of protest may be regarded as contradicted by the mere non-receipt of the notice, it is not difficult to see that a clog would be put upon its circulation, and the usefulness of this system of credits, which is so essential to commercial prosperity, would be seriously impaired. *Shed* v. *Brett*, 1 Pick. 401; *Eagle Bank* v. *Hathaway*, 5 Met. 212; *Walworth* v. *Seaver*, 30 Vt. 728; *Marshall* v. *Baker*, 3 Minn. 224 (320;) *Smyth* v. *Hawthorn*, 3 Rawle, 355; *Bank of Columbia* v. *Lawrence*, 1 Pet. 578; *Loud* v. *Merrill*, 45 Me. 516; Story on Prom. Notes, § 328.

It was in evidence that the notary public was a book-keeper in the plaintiff's bank, but no inference can properly be drawn from this fact of any official delinquency on his part. It is also to be remarked, to avoid possible misconception, that the question is not raised by counsel in this case as to whether, the maker being a member of the firm which indorsed the note, his knowledge that it was not paid served as notice to the firm of its non-payment; and we have not considered that question.

One of the main controversies in the case grew out of this relation of the parties. The main facts upon which it arises, as shown by the evidence, are that the notes in suit were renewals of notes made and indorsed in like manner as the notes sued on. The origin and history of the notes are as follows: The firm of Richards, Wilder & Co. was engaged in the lumber business, and William Richards, a member of the firm, became its customer and bought lumber of it, for

which he executed and delivered his promissory notes, payable to the order of the firm, and the firm, in its ordinary course of business, indorsed the notes to the plaintiff, at whose bank it did its banking business. The indorsement was made by a managing clerk of the firm, who simply indorsed thereon the firm name, and who had authority at that time so to indorse notes taken in the firm business, and was constantly in the habit of doing so. The notes were taken to the bank by the clerk for discount, in the usual course of business, and were discounted as paper belonging to the firm, and the bank credited the firm on its books with the amount thereof, which was checked out by the firm, and used in its business, in the ordinary. way.

This is not the case of an attempted withdrawal by one partner of the partnership funds to pay his own private debts or for his private benefit, nor does the transaction appear to be such on the face of the notes. On the contrary, the notes showed and indicated on their face the true relations of the parties to be in accordance with the facts as above stated. The notes were assets in the hands of the firm, and were negotiated by the firm for their full value, and the ordinary liability of indorsers was incurred by the indorsement. If the matter had rested here, we think it quite clear that the indorsers' liability to pay the notes would have been fixed by taking the proper steps to charge them at their maturity. These notes were several times renewed, and, as is claimed by the defendants answering, without their knowledge or consent, except perhaps as to the first renewal. The manner of effecting the renewal was this: William Richards made a new note, payable to the order of the firm, and procured the clerk to indorse the firm name upon it, and then, without any other delivery to the firm, he took it to the bank, paid the interest in advance, delivered it, and took up and retained the old note. There was evidence tending to show that the plaintiff knew of the manner in which this was done, and in some instances, and with respect to one of the notes sued on, the new note was drawn, signed and indorsed in the bank, in the presence of the plaintiff, the maker and the clerk being there present.

It is claimed by the defendants that this was a private transaction of William Richards on its face; that the notes sued on were made in payment of the private debt of the maker to the bank; and that the indorsement was apparently, and to the knowledge of the plaintiff, without the scope of the partnership business and without consideration to the firm, and that the defendants cannot for these reasons be held thereon. But we think otherwise. The original indorsement was clearly within the scope of the partnership business, and the firm was subject to the conditional liability of indorsers of the paper; and the mutual agency of the partners implied from the relation, by which each is empowered to bind the others within the scope of the partnership business, extends to the renewal of an indorsement of the firm made in the partnership business; and the taking and negotiation by the firm, by indorsement, of a note given by a partner to the firm, will not of itself withdraw from that partner his agency to act for the firm with respect to the renewal of such indorsement. There was, however, evidence on the part of the defendants, conflicting with testimony introduced by the plaintiffs in rebuttal, that, before the last renewals were made, the members composing the firm of Richards, Wilder & Co. mutually agreed—the firm being then engaged in winding up its business—that the defendants How and Wilder should have exclusive control and management of the business for the future, and should have exclusive power and authority to make and indorse notes in the name of the firm; that the authority of the clerk to sign the firm name was withdrawn; that this agreement and withdrawal of authority were communicated by Mr. Wilder to plaintiffs; and that Mr. Wilder notified the plaintiffs that if the notes were to be again renewed, Mr. Richards must procure another indorser, and that the firm would not again indorse them. If this is the correct state of facts, (the evidence was directly in conflict,) and the plaintiffs afterwards again took the indorsement of the firm in the handwriting of the clerk, whether indorsed by virtue of assumed authority from the firm, or as the amanuensis of William Richards, we think the defendants, other than William Richards, could not be held thereon, and so the court below charged the jury.

With reference to the first branch of the question the court seems to have left it to the jury to say whether the notes in suit were in fact given for the private debt of William Richards to the plaintiffs, and whether the indorsement thereon was, for that reason, without consideration to the indorsers, and without the scope of the partnership business. The main facts as to the origin and history of the notes, and the consideration for the renewals, were uncontroverted; and, without going into detail, we think some of the instructions of the court upon this branch of the case were likely to mislead the jury.

As there must be a new trial, it is unnecessary to notice the other alleged errors and irregularities, as they are not likely to be repeated, except to add that an error arising from the denial of a motion by the defendant to dismiss for defect of proof when the plaintiff rests, is not available to the defendant if he goes on with the case, and the defect is supplied by proof subsequently made.

Order reversed, and new trial granted.