Eugene M. McCarthy, J.
This proceeding to recover premises is brought by petitioner landlord pursuant to paragraph 31 of a rider annexed to and made a part of a written lease dated January 11, 1965.
Said lease was for a two-year term. Paragraph 31 provided for a two-year renewal of the lease from the expiration date, subject to all the terms and conditions of said lease, and states: “ unless either party on or before the 60th day next preceding the termination of any term granted hereby shall, give notice to the other of an intention to surrender or have possession of the premises, as the case may be. Said notice by landlord or tenant must be by XT. S. Certified Mail.”
On November 15, 1966, the landlord wrote and mailed (by certified mail) to the tenant a letter giving notice pursuant to said paragraph 31 that the landlord wished to have possession of the said premises. Said letter was correctly addressed to tenant and bore the requisite postage.
The envelope was postmarked (in red): “Flushing, N. Y. No. 15 ’66 it bore a red and white sticker stamp which reads: “ certified mail No. 543903 On the lower left corner of the envelope appears a direction typed by the sender, which reads:
‘ ‘ CERTIFIED MAIL RETURN RECEIPT REQUESTED ’ ’. Also appearing on the obverse of the envelope appears the United States postal stamp in red ink which reads: “ Returned To Writer Reason checked”; under this heading appear various reasons for the return of the article. A check mark appears in the space alongside the reason reading: “Unclaimed”. Another post office stamp in red ink states: ‘ ‘ undeliverable during delivery hours notice left ”, followed by a number written in blue ink. Another post office stamp in red ink reads “ NOV 21 1966 final notice”. The envelope bears a second postmark (in black *196 ink) which reads: “new york, n. y. NOV 30 PM 1966 ”. Said envelope containing the disputed notice of termination was returned to the landlord, at the address printed in the upper left corner, by the post office. Respondent tenant testified that a letter sent by regular mail and received by her on or about January 9,1967 was the only communication, or evidence of any communication, which she received; and that she had never received any notice from the post office that the piece of certified mail in question was being held by the post office, either for redelivery or for her to claim at the post office. She further testified that she had not received any notice from her doorman as to any mail offered to him for delivery by the postman. The doorman was not called to testify.
After extensive research upon the issue raised by the foregoing set of facts, I have discovered no case in point and must therefore decide this issue de novo. I find for the petitioner landlord.
The parties to an agreement must be bound by the terms of their agreement. Having agreed that notice ‘ ‘ must be by U. S. Certified Mail ’ ’, without any further provisos as to actual receipt or alternative methods of delivering said notice, the parties must be presumed to be aware of the United States postal regulations covering the procedure involving delivery and notice of arrival of undelivered, certified mail.
The standard operating procedure covering the handling of certified mail is clearly and succinctly set forth in the Code of Federal Regulations (tit. 39, ch. 1, subch. F, entitled “ special mail services ” [revised as of Jan. 1, 1966]). Part 58 thereof, entitled “ certified mail ” is comprised of five sections; section 58.5 thereof, entitled ‘6 Delivery ’ ’, reads as follows:
“ (a) Procedure. Mail for delivery by carriers is taken out on the first trip after it is received, unless the addressee has requested the postmaster to hold his mail at the post office. Certified mail not restricted in delivery will be delivered to the addressee or his authorized representative. Certified mail marked ‘ Deliver to Addressee Only ’ will be delivered only to the person addressed. * * * Delivery rules are the same as for registered mail. See § 51.9 of this chapter.
“ (b) Notice of arrival. The carrier will leave a notice of arrival if he cannot deliver the certified article for any reason. The article will be brought back to the post office and held. If the article is not called for or its redelivery requested, it will be returned at the expiration of the period stated by the sender, or after 15 days if no period is stated.”
*197 Section 51.9 (referred to in subd. [a] above) governs delivery of registered mail. Subdivision (d),' entitled “ Notice of arrival ”, reads as follows: “ If the carrier is unable to deliver registered mail, he will leave a notice. * * * If the mail is not delivered or called for within 5 days a second notice will be issued, provided the maximum period for which the mail may be held permits. No second attempt to deliver will be made unless the post office is requested to do so. ’ ’
It will be noted from the above that not just one, but two notices are called for by the regulations. Evidence of two notices to the addressee appears on the envelope. Evidence of the first notice appears in the red stamp: 11 undeliverable during delivery hours notice left” followed by a number written in blue ink; evidence of the second notice is contained in the red ink stamp:1 ‘ nov 211966 final notice ’ \ Furthermore, the dates show a strict compliance with the regulations set forth above; allowing for five full days (during which the letter was neither delivered nor called for) from the postmark date of November 15 the second or final notice bears the date of November 21; and the second postmark bearing the date November 30 is just 15 days after the first postmark date.
Additional support for the conclusion that the respondent received notice of the certified letter may be found in the legal fiction of presumptions. In Brandt v. Morning Journal Assn. (81 App. Div. 183 [1st Dept., 1903], affd. 177 N. Y. 544) the application of presumption is discussed. At page 185, Ingraham, J., wrote: “ In every system of law which regulates the relation of individuals toward each other, there are certain presumptions which arise and which are applied to controversies which come before the courts for adjudication. A ‘ presumption ’ is defined as ‘ A rule of law that courts and judges shall draw a particular inference from a particular fact, or from particular evidence, unless and until the truth of such inference is disproved; ’ and presumptions are divided into two classes. 1 Conclusive presumptions are inferences which the law makes so peremptorily that it will not allow them to be overturned by any contrary proof, however strong. ’ ‘ Dis-
putable presumptions are inferences of law which hold good until they are invalidated by proof or a stronger presumption. ’ (Bouv. Law Dict.) ”
Decisions are legion as to what constitutes due notice by mailing in special areas governed by express, statutory provisions such as in the Insurance Law, Vehicle and Traffic Law and others. An analogy can be. drawn by substituting for the *198 governing statutory provisions in those cases the contract provisions governing in the case at hand. In Goeller v. Equitable Life Assur. Soc. of United States (251 App. Div. 371 [1st Dept., 1937]) plaintiff sought payment under a life insurance policy. It was conceded that the premium in question had not been paid but plaintiff contended that due notice of premium had not been given. Defendant put in two defenses. After reciting the first one, Untermyer, J., went on to state (pp. 372-373): ‘1 It further contends that the evidence of non-receipt of the notice by the plaintiff was insufficient as matter of law to rebut the proof offered by the defendant that the notice had in fact been mailed. We prefer to rest our decision on this appeal on the latter ground. Section 92 of the Insurance Law does not require that notice of premium shall be received by the insured or by the assignee of the policy. It only requires that notice of premium shall have been mailed. (Wolarsky v. N. Y. Life Ins. Co., 120 App. Div. 99.) To establish that fact, section 92 provides that ‘ the affidavit of any officer, clerk or agent of the corporation, or of anyone authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be presumptive evidence that such notice has been duly given. ’ Such an affidavit was offered in evidence by the defendant and received. The defendant also made very satisfactory common-law proof by persons then in its employ that the notice had been mailed to the plaintiff at his address in New York city. The plaintiff then produced evidence of employees, together with his own testimony, that the notice had never reached its destination. Such evidence of non-receipt, however, was insufficient, since, if notice was mailed, though not received, the obligation imposed on the defendant by the statute was satisfied. This does not mean, of course, that the plaintiff could not rebut the presumption created by the affidavit by proof that notice was not mailed. We only hold that proof of non-receipt was insufficient for that purpose.”
In the case before us the controlling language of paragraph 31 similarly does not require that notice shall be received; it requires only that it “ must be by U. S. Certified Mail ”. Substituting for the presumption set forth in section 92 of the Insurance Law, the presumption that public officials will do their duties further strengthens the analogy. In Ramsay v. Hayes (187 N. Y. 367, 370 [1907]) Cullen, Ch. J., opined: “ The presumption is that a public officer has done his duty, and where it is claimed that the duty has been violated the burden of proof is on the party alleging such fact to prove it. *199 (Leland v. Cameron, 31 N. Y. 115; Wood v. Morehouse, 45 N. Y. 368; People ex rel. Manhattan Ry. Co. v. Barker, 146 N. Y. 304).”
The presumption that a public officer will discharge his duties extends to officers of the postal service. (Henderson v. Carbondale Coal & Coke Co., 140 U. S. 25 [1891].) (See, also, Oregon S. S. Co. v. Otis, 100 N. Y. 446, and News Syndicate Co. v. Gatti Paper Stock Corp., 256 N. Y. 211.)
In Trusts & Guar. Co. v. Barnhardt (270 N. Y. 350 [1936]) it was held that testimony of an indorser on a note, that he had not received notice of protest, was insufficient to create an issue of fact concerning mailing of the notice, established prima facie by a notarial certificate to that effect. At page 354, the court citing from the case of Wilson v. Richards (28 Minn. 337) stated: “ But evidence of the non-receipt of the notice is, standing alone, incompetent to contradict the certificate. It might be competent or corroborating evidence if there were any testimony tending to show that the notice was not in fact deposited in the post-office, but not otherwise.”
In conclusion, we have on one side of the scales: (1) the undeniable posting of the notice of intention to take possession pursuant to the agreed method of certified mail; (2) the unambiguous regulations of the United States post office which here called for two notices to be issued to respondent advising her of certified mail being held for her; (3) the presumption that post-office officials will perform their duties; and (4) all evidence in the form of notations stamped on the envelope by postal authorities indicating a precise conformance to the postal regulations. On the other side of the scales we have only the naked denial by the respondent that she ever received any notice that the post office was holding certified mail for her. The petitioner must prevail.
A contrary holding upon the above-stated set of facts could permit a party to a contract to completely thwart the agreed method of termination (i.e., notice by certified mail) by being out — whether at work or otherwise — at the time of his one scheduled mail delivery (in residential zones) and then denying receipt or any knowledge" of the two notices of certified mail being held for him, which are required by the postal regulations to be given him, without his offering one scintilla of proof in support of his contention.