## BRANDT v. MORNING JOURNAL ASS'N.

(Supreme Court, Appellate Division, First Department.    March 13, 1903.)

1. LIBEL—MALICE—EVIDENCE.
  Where it appears that a publication was false and libelous per se, the jury may find the existence of malice.

¶ 1. See Libel and Slander, vol. 32, Cent. Dig. § 278.

2. SAME—EXEMPLARY DAMAGES.
>    If it be shown that the publication was malicious, exemplary damages
>    are allowable.

3. SAME—REMARK OF COURT—OPINION—INSTRUCTION.
>    Where, in action for libel, the court, in ruling on a question, seemed
>    to express an opinion to the effect that the article complained of had
>    some relation to adultery·on the part of plaintiff, but the court expressly
>    disclaimed any intention to express an opinion on the effect of the article,
>    and stated that it was for the jury to determine what the article meant,
>    there was no reversible error.

Appeal from Trial Term, New York County.

Action by Ferdinand M. Brandt against the Morning Journal Association. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

C. J. Shearn, for appellant.

Thomas D. Adams, for respondent.

INGRAHAM, J. This action was brought to recover damages for the publication in the German language of an article relating to the plaintiff, which appeared in a newspaper published by the defendant corporation. The complaint sets out the article as published in the German language and a translation, the correctness of which does not seem to be disputed. We have no doubt but that this was a libel per se, and that at the close of the testimony there was evidence justifying the submission of the case to the jury.

The main point relied upon by the defendant is as to the correctness of the instruction to the jury upon the question of exemplary damages. The charge of the court upon that question was the only portion of the charge to which the defendant excepted. The court charged the jury as following:

"It is also my duty to charge you that under the decision of the Court of Appeals in the case of Samuels v. The Evening Mail Association, reported in 75 N. Y. 604, and the decisions of courts which followed that case since that time, that if, in addition to what is necessary to a verdict for the plaintiff under the rules already laid down, you should become satisfied that the article complained of was published under circumstances showing express or actual malice in the defendant or its subordinates who caused the publication in addition to such malice as is presumed by the law, you may award such additional damages beyond any injury actually shown as, in your sound discretion, appear reasonable. There is no evidence in the case showing such express or actual malice, unless it can be inferred from the article as published, and such inference arises therefrom notwithstanding all the explanations which the defendant has given; but of that the Court of Appeals has held the jury are to judge. I may add in this connection that the learned counsel for the plaintiff rested his claim for punitive or exemplary damages solely and exclusively upon such an inference which he asks you to draw."

To this charge the defendant excepted, and it has based its appeal principally upon this exception.

The distinction between "implied" and "express" malice is obscured by the terms used. In every system of law which regulates the relation of individuals toward each other there are certain presumptions which arise, and which are applied to controversies which

come before the courts for adjudication. A "presumption" is defined as "a rule of law that courts and judges shall draw a particular inference from a particular fact, or from particular evidence, unless and until the truth of such inference is disproved"; and presumptions are divided into two classes. "Conclusive presumptions are inferences which the law makes so peremptory that it will not allow them to be overturned by any contrary proof, however strong." "Disputable presumptions are inferences of law which hold good until they are invalidated by proof or a stronger presumption." Bouv. Law Dic. In actions for libel, where the article published is libelous per se, the malice necessary to sustain the action is what would here be called a "conclusive presumption," and, in the absence of a defense, the jury are bound to find a verdict which will compensate the plaintiff for the injury which he has sustained by the publication. No matter what the actual intent of the person publishing a libel per se is, the law implies malice, and for the publication the defendant is responsible.

In certain actions of tort, of which an action for libel is one, exemplary damages are allowed in addition to those which are compensatory. "Exemplary damages" are defined by Bouvier to be "those allowed as a punishment for torts committed with fraud, actual malice, or deliberate violence or oppression." But to justify a recovery for exemplary damages the burden is upon the party asking for such damages of proving "fraud, actual malice, or deliberate violence or oppression"; or, in other words, the malicious intent which the law conclusively presumes to exist in order to sustain a recovery for compensatory damages is no longer presumed, and the plaintiff is bound to sustain the burden of establishing by legal and competent evidence that the publication was malicious. Bouvier defines a malicious act as "a wrongful act, intentionally done, without cause or excuse"—the definition of Bayley, J., in 4 B. & C. 247, and adopted by the Am. & Eng. Enc. of Law (2d Ed.) 623. In the 18th Am. & Eng. Enc. of Law (2d Ed.) 998, it is said: "The term 'malice,' in its broad sense, imports that state of mind or feeling which prompts an individual to do an act whereby another is or may be injured wrongfully and intentionally, without just cause or excuse;" and that a person published the article concerning another with malice as thus defined must be proved by competent legal evidence to entitle a jury to award exemplary damages against him.

The question, then, arises as to the nature of the evidence which justifies an affirmative finding of malice, and this is presented by the exception which counsel for the defendant took to the charge of the learned trial court; for he there told the jury that there was no evidence in the case showing such express or actual malice, unless it could be inferred from the article as published, and that such inference arises therefrom notwithstanding all the explanations which the defendant had given. If there was no evidence except the publication of the article from which the jury could infer malice, and if the publication of the article was not evidence which would justify a finding of such malice, then the instruction to the jury that they might find such exemplary damages was evidently error which required a

reversal of the judgment. This question has been much discussed in England and in this country, and there are many statements in the text-books and in the opinion of the courts which would seem to be hopelessly at variance upon the subject. I shall only attempt to state the general rule as I understand it is established in this state, with a reference to a few of the authorities upon which it is based.

The first case to which I shall call attention is Samuels v. Evening Mail Association, 9 Hun, 288. It was not disputed in that case but that the article complained of was libelous per se. The report states that on the trial it was shown that the libelous article was furnished to the defendant by an established news association; that the article appeared only in the last edition of the Evening Mail, which was printed and distributed before knowledge of the libel reached the editor of the newspaper or the treasurer and manager of the corporation; that the matter that thus appeared in the newspaper was usually printed in the next day's paper, but in this case was suppressed; and that a retraction of the libel was published by the defendant the day after it appeared. The judge refused to charge the jury that the case was not one for exemplary damages, but charged them that, if they believed the libel was maliciously published, the plaintiff would be entitled to, and they would have the right to award, exemplary damages, to which the defendant's counsel excepted. Upon an appeal to the General Term that judgment was reversed, and in determining what was there decided, the opinion both of the majority and minority of the court should be considered. Mr. Justice Brady, in delivering the opinion of the majority, said:

"A careful examination of the case fails to disclose any evidence of such an intent to injure the plaintiff's reputation. If the character of the publication alone determined the right to exemplary damages, it will not be questioned that they should have been awarded; but such is not now the law. There must be proof of actual malice—that is, an intention to do harm— which could not be inferred alone from a desire to communicate information of striking, thrilling, startling, or important events, which is characteristic of journalism, and which seems to provoke a rivalry as to who shall be first in the field with the intelligence."

After adverting to the facts proved by the defendant, he continues:

"But this is not sufficient to overcome the facts mentioned, which seem to destroy the assumed presence of an intention to do wrong, or, in the language of the judge, 'of a willful intent, on the part of the defendants, to injure the character and reputation of the plaintiff.' Applying the rule, therefore, to this case, that actual malice is necessary to warrant exemplary damages, the refusal to charge that the defendants, upon the evidence, were not liable for actual malice, was erroneous, and a new trial must be ordered."

The presiding justice dissented, and in his opinion said:

"The plaintiff in an action for libel gives evidence of malice whenever he proves the falsity of the libel. It becomes, then, a question for the jury whether the malice is of such a character as to call for exemplary or punitive damages; and that question is not to be taken away from the jury because the defendant gives evidence which tends to show that there was in fact no actual malice. When he gives no such evidence, it is the duty of the court to say to the jury that upon proof of the falsity of the libel the plaintiff is entitled to exemplary damages in their discretion. * * * But where he gives evidence tending to prove the absence of actual malice, then it is the duty of the judge to submit to the jury the question, as one of fact, whether

such malice existed in the publication. * * * But in libel cases, the falsity of the libel being proof of malice sufficient to uphold exemplary damages, the right to recover them in the discretion of a jury rests in the very act done in the publication of the false libel; and whoever is chargeable with that act is chargeable with the legal consequence, which is the right of the jury to redress the injury by imposing reasonable damages beyond any injury actually shown."

The plaintiff in that case appealed to the Court of Appeals, when the judgment of the General Term was reversed, and the dissenting opinion of Davis, P. J., adopted as the opinion of the court. 75 N. Y. 604. In that opinion stress seems to be laid upon the proof at the trial that the libel was false, and that it is only upon proof of its falsity that the jury are justified in finding express malice from the publication. I assume that what was intended here is that the falsity of the libel must appear from all the evidence in the case. In an action for libel the charge is presumed to be false unless the defendant justifies in his answer, in which case the burden is on the defendant to prove the truth of the libel. But whether the burden is on the plaintiff to show affirmatively that the libel is false before he would be entitled to have the jury find exemplary damages from the fact of publication alone, is not material in this case, as there was considerable evidence as to the truth of the facts charged; and the question as to whether there was proof sufficient to establish to the satisfaction of the jury that the libel was false before they could find malice from the publication is not raised by any exception to the charge or requests to charge. The court charged the jury that the plaintiff was entitled to recover if they should find that the plea of justification had failed in one or more substantial particulars; so in finding for the plaintiff the jury must have found that the publication was untrue. The Samuels Case, therefore, as I view it, and as I think it has been understood by the profession, distinctly decided that where an article libelous per se has been published concerning another, and that article has been shown to be false, the jury can find from the fact of publication that malice actually existed, in which case they are justified in awarding exemplary damages. Considering the two opinions of the General Term, it will be seen that the point in difference between them was the right of the jury to find exemplary damages when there was no evidence of malice except the publication; and upon the adoption by the Court of Appeals of Presiding Justice Davis' opinion it necessarily adopted the law as declared in that opinion—that the plaintiff in an action of libel gives evidence of malice whenever he proves the falsity of the libel from which a jury can award exemplary damages. The plaintiff must prove malice. He may prove ill will and a desire to injure on the part of the defendant. He may prove such reckless conduct in the publication of a serious charge against an individual as will indicate such a wanton and reckless disregard of the rights of others as will justify an inference of malice. But in all these cases it is malice that is to be proved; and the question is what evidence the jury are entitled to consider as proof of malice. Now, the Samuels Case has been cited many times by the appellate courts in this state, including the Court of Appeals, and I know of no case in which Judge Davis' opinion has been expressly limited or disapproved.

The defendant relies upon the case of Krug v. Pitass, 162 N. Y. 154, 56 N. E. 526, 76 Am. St. Rep. 317. In that case Samuels v. Evening Mail Association was not cited, either in the briefs of counsel or in the opinion of the court. Judge Vann, delivering the opinion of the court, in calling attention to the definition between express and implied malice, says:

"Implied malice, in an action of libel, consists in publishing, without justifiable cause, that which is injurious to the character of another. It is a presumption drawn by the law from the simple fact of publication. Express malice consists in such a publication from ill will, or some wrongful motive implying a willingness or intent to injure, in addition to the intent to do the unlawful act. It requires affirmative proof beyond the act of publishing, including ill feeling or such want of feeling as to impute a bad motive. It does not become an issue, when the article is libelous on its face, unless punitive damages are claimed."

The court then cites the case of Phil. Wil. & Bal. R. R. Co. v. Quigley, 62 U. S. 202, 16 L. Ed. 73:

"That whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person. But the malice spoken of in this rule is not merely the doing of an unlawful or injurious act. The word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations."

It must be conceded, I think, that the language here used is somewhat inconsistent with the language of Judge Davis adopted by the Court of Appeals in the Samuels Case; but I think the language used by Judge Vann must be considered in reference to the question that was then under discussion, and, if the Court of Appeals had intended to overrule the Samuels Case—a case which had been followed by the courts and the profession since 1878—it would have expressly called attention to the case, and stated to what extent it should not be considered as a correct statement of the law. Undoubtedly Krug v. Pitass is an authority for the proposition that the jury were not justified in finding exemplary damages against the defendant, based solely upon the publication of the article then before the court; but as the court does not expressly overrule the Samuels Case, I think we are bound to follow it until the Court of Appeals expressly overrules it. In Warner v. P. P. Co., 132 N. Y. 184, 30 N. E. 393, the Court of Appeals expressly followed the Samuels Case. Parker, J., writing the opinion of the court, says:

"But testimony was adduced on the part of the defendant tending to prove the absence of actual malice on its part towards the plaintiff, which, taken in connection with the evidence of malice which the law imputed when the falsity of the libel was established, presented a question of fact whether malice existed in the publication. If found to exist, then, in their discretion, the jury could award exemplary damages."

In Bergmann v. Jones, 94 N. Y. 51, Judge Miller said:

"The falsity of the libel is sufficient proof of malice to uphold exemplary damages, and plaintiff's right to recover them is in the discretion of the jury. When the falseness of the libel is proved, as a general rule, it is sufficient to warrant the jury in giving exemplary damages."

Counsel for the defendant calls attention to the cases where it has been held that, where a libel is privileged, proof of the falsity of the charge is not evidence of the actual malice which will justify the jury in finding a verdict for the plaintiff; and there are undoubtedly expressions of opinion in cases presenting that question which would seem to sustain that conclusion. It is unnecessary for us to attempt to reconcile these cases. There would seem to be a distinction between the malice that must be proved to justify a jury in awarding exemplary damages and the malice that must be proved to entitle a plaintiff to recover where the publication is privileged.

There are several exceptions to rulings on evidence which are relied upon, but there was no ruling that would justify us in reversing the judgment. The evidence admitted bearing on the relation of the plaintiff and his housekeeper subsequent to the publication was not error considering the testimony that had been produced on behalf of the defendant as to the relations between these people after they left New Jersey and came to New York.

The defendant also calls attention to a statement of the court in ruling upon a question which was subsequently withdrawn, and not answered, in which the court seems to have expressed an opinion that the effect of the article had some relation to adultery. The court, however, expressly disclaimed any intention to express an opinion upon the effect of the article, stating that he was merely ruling on an objection, and that the jury were to find what the purport of the article was.

There was no error here which would justify the court in interfering with the verdict. There is no other question that requires consideration, and I think the judgment and order should be affirmed, with costs. All concur; VAN BRUNT, P. J., in result.