In proceedings to compel a general guardian to settle his accounts, where it appears that he received from a former guardian, a larger sum than he charged himself with, which is included by a supplemental account, but there is no evidence as to what he did with the money, his account may be charged with such amount as such sum would have earned if deposited in a bank, from its receipt to the date of settlement.

2. SAME.

A general guardian who was subsequently discharged had paid to his successor, out of the ward's funds, money as a loan to be used to defray the funeral expenses of a brother of the second guardian. The succeeding guardian acknowledged the indebtedness to the ward, though incurred before his appointment. Held, that his account could be surcharged with such sum, together with interest thereon.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guardian and Ward, § 321.]

3. SAME—MAINTENANCE OF WARD.

A guardian on an accounting is entitled to such a credit for board and maintenance of the ward as would have been authorized on an application made in advance.

4. SAME—COMMISSIONS—COSTS.

Where the facts show a disposition on the part of a guardian to deplete the funds of the ward, he is not entitled to commissions, and is chargeable with costs of accounting.

In the matter of the judicial settlement of Frank Ward, guardian of Susie Ward Dresch.   Decree entered.

Frank S. Wright, for Susie Ward Dresch.
John Kingston, for guardian.

WOODIN, S.   This is a proceeding instituted by the above-named ward, upon her attaining the age of 21 years, to compel her general guardian to account.   The present guardian, a brother of the ward, was appointed upon her application, after reaching the age of 16 years, to succeed Sister De Chantel, a former guardian appointed while the ward was under 14.   Upon the return of the citation in this proceeding, the guardian filed an account, in which he charged himself with the amount of $393.29, principal, and total interest, $27.10, and credited himself with numerous disbursements, amounting to $338.   The guardian was examined at considerable length concerning the amount of money received by him and the disbursements made by him, and it appears that he had an informal settlement with the former guardian, after his appointment, and that she turned over to him the funds then in her hands belonging to the minor.   Later in the proceeding, after an examination had been made of the bank records, from which it appeared that the guardian had received $75 more than he charged himself with, he filed a supplementary account, including this $75, which makes a total, including interest, of $495.39.   In this supplemental account, however, he has stricken from the credit side certain items which were plainly improper and has included an item of $243, being a charge for 81 weeks' board of the ward at his house.   Objections to the account were subsequently filed, demanding that this item of $243 for board be stricken from the account; also, that the account be surcharged with the amount of $25 received by the present guardian from the former guardian, prior to his appointment; and that he be charged with interest on the $75 above mentioned, and that he be denied his commissions and charged personally with the costs of this proceeding.   Concerning the question of surcharging the account with interest on the $75 referred to, it is now conceded that the guardian received from the former guardian, at the time of his appointment, $495.39, instead of $420.39, as charged in his original account; but he only charges himself with bank interest upon an amount less the $75.   It appears that the guardian kept all of the funds of the minor on deposit in the bank, with the exception of this $75, and such amounts as were drawn from the bank, from time to time, for expenditures on behalf of the ward.   No proof is offered by the guardian as to what investment or other disposition of this $75 was made by him, and it necessarily follows that he must be charged with interest on that sum from the time he received it to the present time.   His account may, therefore, be surcharged with an amount of interest which said sum of $75 would have earned if the same had been deposited in the bank with the other funds from the time of his appointment to the present time.

In regard to the item of $25, alleged to have been paid to the present guardian by the former guardian, it is practically conceded that the present guardian had this money, and it appears from the uncontradicted testimony of Sister De Chantal, the former guardian, that the

money was paid out of the minor's funds to the present guardian as a loan, on the express promise to repay the same; the money to be used to help to defray the funeral expenses of a deceased brother. It is contended, however, by the accounting guardian, that this loan, if it should be held to be such, was one unauthorized by law, and was made by the former guardian at her own risk, and that the ward must look to the former guardian for this money; this court not having jurisdiction to surcharge the account with this item. It has been held that the Surrogate's Court has no jurisdiction to try the question of the guardian's alleged indebtedness to the ward, where that alleged indebtedness was incurred prior to the guardian's appointment, and the fact of the indebtedness was expressly denied by the guardian. But, in this case, the fact of receiving the money by him is not controverted, and inasmuch as he had the same, clearly knowing that it was taken out of the estate of the minor, it seems to me that this indebtedness passed to him from the former guardian as a chose in action against himself individually, for which he must account. The account may therefore be surcharged with the sum of $25 and interest thereon from the time of his appointment to the present time, equal to the amount it would have earned had it been deposited in the bank with the other funds.

This leaves for discussion the item of credit of $243 for board and lodging alleged to have been furnished by the guardian to the ward. It appears that, subsequent to the appointment of the present guardian, he took the ward into his home and provided board and lodging for her. The guardian and his wife both testified that the ward came to live with them on the 7th of March, 1900, and was boarded and lodged by them from that time until January 22, 1902, with the exception of the three different times that the ward was at the hospital during that period. It is admitted by the ward that she was boarded at the guardian's home for a part of the period in question; but she testifies positively that between the two dates above mentioned she was not living at the guardian's house, except a part of the time, and during the remainder of the time she was engaged as a domestic elsewhere, and that during the time of this employment she was not boarding or lodging at the guardian's home. She gives, positively, the names of the people by whom she was employed and with whom she lived, and the dates of entering and leaving such employment in each case. No attempt was made to dispute this in rebuttal. I think therefore it appears be-beyond doubt that, during the period in question, the ward was away from the guardian's home and board for a period amounting to one year, three months, and seven days, including the time she was at the hospital, made up as follows: At the hospital, 3 months and 4 days; at Mrs. Hull's, 1 month and 17 days; at Mrs. Stevens', 5 months and 23 days; at Miss Stone's, 4 months and 23 days. No claim, however, is made for board by the guardian for the time the ward was at the hospital. No application was ever made to the court for authority to expend any of the ward's estate for board and maintenance, but, I believe, the rule is well settled that the court, upon the accounting of the guardian, may make such allowance for past support and maintenance of the ward as it might have made if application therefor had been made in the first place. Of course, the guardian was under no legal obligation

to support the ward and could properly have applied for an order to disburse the necessary amount toward her maintenance; but, instead of allowing for the full time claimed, I cannot see that he is, on any theory, entitled to compensation for more than seven months and seven days. It is contended that this claim for board is an afterthought, inasmuch as it did not appear in the original account in this proceeding, but was incorporated in the supplemental account. This contention might have some force, perhaps, if it were not for the fact that an item of credit of $112 for board and maintenance appears in the guardian's annual report, filed March 3, 1903, indicating that the guardian contemplated charging for such maintenance. It is undisputed that the ward was at her brother's home for seven months and seven days, and received her board and lodging. I will therefore allow a credit for board and maintenance, covering a period of seven months and seven days, at $3 a week, less the sum of $29.04, which, it appears without dispute, that the ward earned as wages at the button factory, at the rate of $2.42 a week from March 7, 1900, to May 30, 1900, and which wages she turned in, each week, on account of her support.

The failure of the guardian to account for the additional $75 received by him, until confronted by the bank records, his silence concerning, and omission to make any reference to, the $25 paid him from the ward's funds prior to his appointment, and the excessive board bill for which he demands credit, in view of what seem to be the facts, indicate a lack of fairness and suggest a disposition on his part to deplete the estate of his sister intrusted to him. Commissions are therefore denied; and a decree settling the accounts, modified as above, may be entered upon two days' notice, with costs against the guardian personally to be taxed.

Decreed accordingly.