PATRICK SIMPSON, Respondent, *v.* THE FOUNDATION COMPANY, Appellant.

Negligence — Employers' Liability Act — insufficiency of notice — statement of cause of injury not definite enough to comply with statute — when it is error to submit case to jury — erroneous admission of evidence that defendant was insured in casualty company.

A notice is insufficient under the Employers' Liability Act where the cause of the injury is stated only as follows: " Said accident was caused by the failure of the said Foundation Company to provide proper protection for the said Simpson in his employment, and as a result thereof said Simpson was struck by a bucket, which was being used for hoisting purposes, causing him to fall into a pit whereby he sustained serious injury." The statutory provision that " the cause of the injury " must be stated means that the accident should be so described that a person of ordinary intelligence who knew nothing about it could understand how it happened.

Where no evidence of statutory liability was furnished and the court refused to charge that there was no evidence upon which negligence could be predicated under the act, and the jury was told to apply the statute although only a common-law liability was shown, the case was submitted to the jury upon an erroneous theory which constitutes reversible error.

When the injured person survives the accident and brings the action himself, evidence that he had a wife and children ordinarily has no bearing on the subject of damages, and is incompetent for any purpose. In this case, however, evidence that the plaintiff was married, although incompetent when received, was subsequently made competent through testimony given by the plaintiff and his physician tending to show that as the result of the accident he had lost all sexual power; but evidence that the plaintiff had begotten children prior to the injury is incompetent.

Evidence that the defendant in an action for negligence was insured in a casualty company, or that the defense was conducted by an insurance

company, is incompetent and so dangerous as to require a reversal, even when the court strikes it from the record and directs the jury to disregard it, unless it clearly appears that it could not have influenced the verdict.

Where answers were given which it was claimed were unexpected, and which brought out evidence in violation of this rule, it was the duty of the examining counsel to move to strike out the evidence and to ask the court to instruct the jury to disregard it.

*Simpson* v. *Foundation Co.*, 134 App. Div. 930, reversed.

(Argued March 21, 1911; decided April 25, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 3, 1909, affirming a judgment in favor of plaintiff entered upon a verdict.

On the 27th of June, 1906, the defendant was engaged in constructing the foundation for a large building in lower Manhattan, and the plaintiff was in its employ as the foreman of a gang of eight laborers. An excavation, called by the witnesses the " pit," had been made to the depth of thirty feet and a platform erected therein, fifteen feet square and twenty-five feet high, supported by posts. There was a hopper two feet square in the center of the platform through which sand and crushed stone were fed to a mixer below in order to make concrete for the foundation of the building. These materials were dumped from the street into the bottom of the pit, from whence they were raised to the platform by an iron bucket moved by a derrick. Beside this platform, but six or seven feet higher and parallel thereto, was another called the engineer's platform, on which stood the derrick and an engine to run it. The position of the engineer was eighteen feet back from the mixing platform. Six men, under the orders of the plaintiff, filled the bucket at the bottom of the pit, and when ready it was raised by the derrick above and over the lower platform and after it was dumped into the hopper by a trap in the bottom, it was swung off the platform and lowered into the pit to be refilled. Two of plaintiff's men, standing on the platform, added water and cement as the sand and stone were thrown into the hopper.

Owing to the difference in the height of the two platforms, the place where the engineer stood, the presence of a pile of pig iron on the edge of the engineer's platform next to the other platform and other obstructions, the engineer who operated the derrick could see only a small part of the lower platform, which will now be spoken of as simply the platform. The light was poor. No bell, whistle or other signal was provided to give notice when the bucket was to be moved, but prior to the night of the accident two signalmen had been employed to notify the engineer how and when to move the bucket and to warn persons necessarily on the platform so that they could get out of the way. The work went on constantly night and day, three gangs of men being employed in shifts of eight hours each.

The plaintiff had been working as a laborer from eight in the morning until four in the afternoon, but on the night in question, having been promoted to the position of foreman, he began at midnight. He had charge of the work of mixing the concrete, and it was necessary for him at times to be on the platform in order to direct the men · there employed, and from there to shout his orders, through the noise of much machinery in operation near by, to his other men at work in the pit. The engineer was not under him nor subject to his orders. For some reason during the night of June 26th and the morning of June 27th there were no signalmen present as there had been on all other occasions while the plaintiff was at work for the defendant. He reached the place shortly · before midnight, went into the pit to place his men and give them directions, and while he was thus employed the night superintendent of the defendant shouted to the engineer from a distance to commence moving the bucket, and the engineer answered that he had no signalmen. The superintendent himself then signaled the bucket for two round trips and a part of the third, or until it was raised from the pit to the platform, when he went away, shouting to the engineer to go ahead. At about this time the plaintiff came on the platform, spoke to one of his men, walked to the edge and stooped

31

over, with his back to the bucket, in order to give orders to the men below. At this instant the heavy bucket was moved swiftly and without warning, and striking the plaintiff knocked him off the platform into the pit, injuring him severely. He did not know that the signalmen had been withdrawn.

While there was a decided conflict in the evidence, the facts could have been found as thus stated. The jury rendered a verdict in favor of the plaintiff for $25,000, and upon appeal to the Appellate Division the case was argued twice. On the first argument the court decided to reverse by a vote of three to two, but upon a re-argument before the court after a change in its membership the judgment was affirmed by a like vote. (132 App. Div. 375; 134 App. Div. 930.) The defendant then appealed to this court.

*Frank V. Johnson* and *E. Clyde Sherwood* for appellant. Exhibit " A," claimed to have been served as a notice under the Employers' Liability Act, was improperly in evidence and it was error to refuse to strike it from the record and to instruct the jury that the provisions of that act were applicable to this case. (*Nappa* v. *E. R. R. Co.*, 195 N. Y. 176; *Logerto* v. *C. Bldg. Co.*, 198 N. Y. 390; *Barry* v. *D. D. Co.*, 121 App. Div. 810, 813; *Ortoluna* v. *D. C. Co.*, 120 App. Div. 59; *Harris* v. *B. M. & E. Works*, 188 N. Y. 141; *Davenport* v. *Oceanic Am. Co.*, 132 App. Div. 368; *Welch* v. *Waterbury Co.*, 136 App. Div. 315; *Lewis* v. *Gehlen*, 136 App. Div. 855; *Beauregard* v. *N. Y. Tunnel Co.*, 136 App. Div. 834; *Finnegan* v. *N. Y. Cont. Co.*, 122 App. Div. 712; 126 App. Div. 947; 194 N. Y. 244.) The trial court erred in allowing the plaintiff to show that he had a wife and four children. (*Lipp* v. *Otis Bros. & Co.*, 161 N. Y. 559; *Pennsylvania Co.* v. *Roy*, 102 U. S. 451; *Shaw* v. *Worcester R. R. Corp.*, 8 Gray, 45; *Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 77; *Purcell* v. *Duncan Co.*, 107 App. Div. 501; *Myers* v. *Malcolm*, 6 Hill, 292; *Moody* v. *Osgood*, 50 Barb. 628; *C. & N. R. Co.* v. *Bayfield*, 37 Mich. 205; *Stockton* v. *Fry*, 4 Gill [Md.], 314; *L. & N. R. R. Co.* v.

*Binion,* 107 Ala. 645.) The fact that the defendant carried insurance against loss because of accidents of this kind was several times improperly brought to the attention of the jury. (*Hordern* v. *Salvation Army,* 124 App. Div. 674; *Cosselmon* v. *Dunfee,* 172 N. Y. 507; *Loughlin* v. *Brassil,* 187 N. Y. 135; *Manigold* v. *Black River Traction Co.,* 81 App. Div. 381; *Haigh* v. *Edelmeyer & Morgan Hod El. Co.,* 123 App. Div. 376; *Kelsey* v. *City of New York,* 123 App. Div. 381.) The written papers, purporting to be statements made by witnesses called on behalf of the defendant, but which papers it was conceded these witnesses had refused to sign, were improperly admitted in evidence to the serious prejudice of the defendant's case. (*Loughlin* v. *Brassil,* 187 N. Y. 128; *Dougherty* v. *Milliken,* 163 N. Y. 527; *Dolan* v. *Herring-Hall-Marvin Safe Co.,* 105 App. Div. 366; *Burns* v. *Crow,* 123 App. Div. 251; *Belden* v. *Davies,* 2 Hall, 433; *Jacobs* v. *B. E. R. Co.,* 188 Mass. 245; *Trenkmann* v. *Schneider,* 26 Misc. Rep. 695; *Donaldson* v. *Alexander,* 29 Misc. Rep. 356.)

*Jeremiah A. O'Leary* and *Charles J. Nehrbas* for respondent. Plaintiff's notice under the Employers' Liability Act was properly admitted in evidence. (*Hurley* v. *Olcott,* 198 N. Y. 132; *Valentino* v. *G. M. Co.,* 139 App. Div. 139.) The appellant's claim that because the fact was brought out at the trial that the Travelers' Insurance Company had something to do with the case the judgment should be reversed is untenable. (*Cosselmon* v. *Dunfee,* 172 N. Y. 507.) Plaintiff's exhibits containing statements of witnesses were properly admitted in evidence. (*Gaffney* v. *People,* 50 N. Y. 424; *Hanlon* v. *Ehrich,* 178 N. Y. 482; *Sterrett* v. *Third Nat. Bank,* 122 N. Y. 692; *People* v. *Wiechers,* 179 N. Y. 464; *Quinlin* v. *Welsh,* 141 N. Y. 165; *People* v. *Blake,* 121 App. Div. 613; 193 N. Y. 20; 2 Wigmore on Evidence, § 1041; *People* v. *Jackson,* 3 Park. Cr. Rep. 590; *Patchin* v. *A. M. Ins. Co.,* 13 N. Y. 268; *Mayer* v. *People,* 80 N. Y. 377; *Milne* v. *Leisler,* 7 H. & N. 786.)

Vann, J. Through undue zeal on the part of the counsel for the plaintiff this case was overtried, and hazardous chances were taken by inviting rulings, which require a reversal of the judgment. We will call attention to a few of the errors, trusting that upon another trial counsel will realize that the true interest of a client is rarely advanced by a verdict resting on error.

The only specific allegations of negligence set forth in the complaint are that "the defendant operated a derrick and bucket which swung, raised and lowered in and about said premises and, in utter disregard of its duty to the plaintiff, failed to supply a sufficient number of servants to operate said apparatus; failed to furnish or supply signalmen at various points about said premises to warn plaintiff of the approach of said apparatus or any of its parts; failed to furnish or supply other signalmen or appliances of any kind whatever to warn plaintiff of the approach of said apparatus or any of its parts; failed to supply sufficient electric lights, or any other kind of light in the night time to enable plaintiff to see about said premises with reasonable clearness, so that said premises were dark." Although these were simply allegations of negligence at common law, the plaintiff also alleged the service of a notice under the Employers' Liability Act, but without setting forth any fact to bring the case within the reach of that statute.

Upon the trial the first evidence offered by the plaintiff was a notice claimed to conform to said act. The defendant objected to it as incompetent and immaterial, as having nothing to do with the case and as wholly insufficient in that it did not properly show the cause of the accident or comply with the requirements of the statute. The objection was overruled, an exception taken and the notice read in evidence. It stated the time and place of the injury with fullness and accuracy, but the only attempt to state the cause of the injury was as follows: "Said accident was caused by the failure of the said Foundation Company to provide proper protection for the said Simpson in his employment, and as a result

thereof said Simpson was struck by a bucket, which was being used for hoisting purposes, causing him to fall into a pit whereby he sustained serious injury."

In submitting the case to the jury the court read sections one and two of the statute and charged that "This action is brought under this act and this law applies to the evidence in this case and you must apply this law to the evidence." The court further instructed the jury to decide whether the defendant provided a safe place and exercised proper care to keep it safe, and refused to charge that there was no evidence to warrant a finding that there was any defect in the ways, works or machinery furnished by the defendant which in any way contributed to the accident. Exceptions were duly taken to these rulings.

1. The notice did not comply with the Employers' Liability Act because it failed to adequately describe the accident, and did not notify the defendant of any cause of injury that came within the provisions of that statute. It is simply a notice of common-law negligence, which was not required, and is not a notice to bring the case within the enlarged liability imposed by the legislature. There is no notice of any defect in the condition of the ways, works or machinery, or of the negligence of any person exercising superintendence with the authority or consent of the employer. It alleges a failure to provide "proper protection," but does not point out the kind of protection needed, nor the nature of the work in which the plaintiff was engaged, nor "indicate what the real, producing trouble in this case was as distinguished from many others which might have existed." While it says that he was struck by a bucket and caused to fall into a pit, it does not state what he was doing, why the bucket struck him, where he fell from, or under what circumstances he fell. Upon reading the notice the employer could not tell whether something broke, or whether the accident was caused by some defect in machinery, or through careless operation, or the failure to give warning, or through any particular act of omission or commission. The allegation of a failure to provide proper

protection is too general, for that is simply an allegation of negligence, with " no statement which fairly and completely described the cause of the accident," as we held was necessary in *Finnigan* v. *New York Contracting Co.* (194 N. Y. 244, 248). In a later case we said " that the accident should be so identified that the master's attention is called to the exact occurrence," and that the notice " must reasonably describe the accident." (*Logerto* v. *Central Building Co.*, 198 N. Y. 390, 394.) In that case the notice stated at length all the possible statutory grounds of liability, but the only allusion to the accident or cause of injury was in the statement that " as a result of all which certain earth, stone and material was caused and permitted to fall upon and seriously injure me." We held that this did not reasonably and sufficiently describe the accident or occurrence.

It is not enough to specify the time and place of the accident, although that would guide the employer to some extent in making an investigation, which is one of the objects of requiring notice. The statute says that " the cause of the injury " must also be stated, and this means that the accident should be so described that a person of ordinary intelligence who knew nothing about it could understand how it happened. Notice that the plaintiff was struck by a bucket and knocked into a pit is good as far as it goes, but it was necessary to further state, however informally, how the bucket came to strike him, or, in other words, in some reasonable way to describe the occurrence as it actually took place.

2. Even if the notice had been adequate, the evidence did not warrant the submission of the case to the jury as one governed by the Employers' Liability Act. As was well said by Mr. Justice Miller below : " The master was liable, not for a defect in the ways, works or machinery, nor for the failure to furnish a safe place in which to work, but if at all, for not furnishing a signalman. The evidence respecting the light, the absence of bell or other signal, and the obstructions of the engineer's view only relate to the defendant's duty to furnish a signalman and to the question of the plaintiff's contributory negligence."

The plaintiff pleaded and proved only an action at common law, and while he alleged the service of a notice he did not prove the service of one sufficient to bring the case within the statute.  Moreover, he furnished no evidence of statutory liability, even if the complaint and the notice had conformed to the act and hence the case was submitted to the jury upon an erroneous theory.  The court refused to charge that there was no evidence upon which negligence could be predicated under the act, and the jury were told to apply the act although only a common-law liability was shown.  This constituted reversible error, which was not cured by the instruction that the plaintiff "must stand or fall on his complaint," for the jury must have understood from the charge as a whole that the complaint set forth a cause of action under the act.  The subject was so thoroughly considered below that we regard further discussion as unnecessary.  (*Simpson* v. *Foundation Co.*, 132 App. Div. 375.)

3. The next evidence received after the notice was introduced was given by the plaintiff himself, who, after testifying that he was thirty years of age at the time of the accident, was asked if he was married, and, under objection and exception, he answered: "I am married.  I was married on the 27th day of June, 1896.  My wife was living at that time and she is living to-day."  He was then asked if he had any children, and, subject to objection and exception, he answered that he had four.

When an action is brought by the personal representatives of a decedent to recover damages for causing his death by negligence, evidence that he had a wife and children is competent, because the measure of damages provided by the statute which authorizes the action is "just compensation for the pecuniary injuries resulting" to the wife and next of kin. (*Matter of Meekin* v. *B. H. R. R. Co*, 164 N. Y. 145, 147; Code Civ. Pro. §§ 1903, 1904.)  When, however, the injured person survives the accident and brings the action himself, the damages recovered belong to him and are allowed only for the loss which he has personally sustained.  In such a case evi-

dence that he had a wife and children ordinarily has no bearing on the subject of damages, and is incompetent for any purpose.

We have thus stated the general rule in relation to the admissibility of such evidence. In this case, however, evidence that the plaintiff was married, although incompetent when received, was subsequently made competent through testimony given by the plaintiff and his physician tending to show that as the result of the accident he had lost all sexual power. It was proper that the jury in estimating the damages should consider the fact that although married and still a young man, he was rendered incapable of enjoying marital rights. Thus, under the peculiar circumstances of this case, evidence of marriage and that his wife was still living was competent, but it is an exception to the general rule.

I am personally of the opinion that evidence that the plaintiff had begotten children prior to the injury was also competent under the extraordinary facts of this case, because he had the natural right to possess unimpaired the power of procreation during the normal period. The fact that he had children was evidence that he possessed the power before the accident. It must be presumed that his children might be a source of comfort and support in his old age, and, hence, loss of the power bore on the question of the pecuniary damages he had sustained, independent of the policy of the law and the interest of society in the perpetuation of the species. It is not a complete answer to say that the law presumes the previous existence of the power, for it is not reversible error to prove a fact which the law presumes.

A majority of my associates, however, are of the opinion that the evidence relating to children was incompetent, and that it was brought in to aggravate the damages. They think that the power is presumed without proof, and that the real object of the attorney for the plaintiff is shown by the fact that the evidence was clearly incompetent when offered, and yet he did not state that he intended to prove anything which might make it competent.

4. The plaintiff, apparently for the purpose of showing that the defendant was not misled by the statutory notice, called his brother, who testified that he had an interview with Mr. Brown, the general superintendent of the defendant, in the presence of a man to whom he was introduced by Brown. The witness was asked what Brown said when he introduced this gentleman, and, under objection and exception, he answered, " I will introduce our representative, Mr. Frank V. Johnson." He was next asked, " Who did he say this gentleman, Frank Johnson, was ? " Subject to objection and exception, he answered, " From the insurance company." The defendant's counsel then insisted that it was improper to ask a question which the attorney knew would elicit an improper answer, and asked the court to withdraw a juror and declare a mistrial. The court did not rule upon the motion, but made a distinct ruling that the evidence should stand, and the defendant again excepted.

Subsequently another witness for the plaintiff testified to an interview with Mr. Brown, and stated that two attorneys were present at the time. He was asked, " Where did they tell you they were coming from ? " The answer was, " Travelers' Insurance Company, I think they said." There was no objection or exception to this question, and no motion was made by either party to strike out any of the evidence relating to the subject of insurance.

Later on in the trial after one Riley had testified for the defendant, a paper purporting to be a statement made by the witness was offered in evidence to contradict him. The last words of the paper were : " I made a statement to a repre-

The plaintiff's counsel claims that the answers to the questions objected to were unexpected to him, and that he intended to show simply that the men who were present at the interviews represented the defendant as attorneys. The circumstances indicate, however, that one object of the questions was to suggest to the jury that the defendant was insured in an accident company in order to induce them to give a larger verdict. Disregarding the questions not objected to, the objections to the other questions were not only overruled, but the answers were allowed to stand by an independent ruling made after it was known what the answers were.

If the answers were unexpected, as claimed, it was the duty of the plaintiff's counsel himself to move to strike out the evidence and to ask the court to instruct the jury to disregard it. Although warned by objection and exception, he had brought it into the record, and when he knew that it was not what he expected, but something highly improper, he should have lost no time in getting it out of the record and doing his utmost to correct his mistake. A prompt withdrawal of the evidence by the counsel for the plaintiff would go farther toward correcting the evil than any motion made by the attorney for the defendant. While there was no proof in this case that the defendant was insured, by suggestion and indirection the jury were given to understand that such was the fact and the result, apparently, is reflected in the verdict.

Evidence that the defendant in an action for negligence was insured in a casualty company, or that the defense was conducted by an insurance company, is incompetent and so dangerous as to require a reversal even when the court strikes it

will require a reversal of the judgment. (p. 616.)

5. Statements, both verbal and written, made out of court by certain witnesses for the defendant, were received for the purpose of affecting their credibility. These statements involved the opinion of the witness, although not an expert, that signalmen were necessary in order to protect the men working on the platform and in the pit. The opinion of a witness upon the vital question upon which the case turned and which was for the jury to decide, was clearly incompetent. As, however, some of the evidence was competent and the objections were not specifically addressed to the part that was improper, we do not hold that the rulings involved reversible error, but simply call attention to the subject by way of suggestion.

Many other rulings made during the trial are challenged by the appellant, but in an opinion of reasonable length it would be impossible to discuss them all, and we have said enough, as we hope, to secure, upon the new trial which it is our duty to order, greater care in offering and receiving evidence and a closer observance of the principles of law.

for a loan of money. The application was granted by the surrogate, and the mother was authorized, as general guardian, to use the amount borrowed for his benefit. Thereafter she made an agreement with the defendant whereby the latter agreed to loan a sum for one year and she assigned her interest, individually and as guardian, in the policy as collateral security for the payment of the loan. The loan was not paid on the date fixed, and thereupon defendant surrendered the policy and applied the customary cash surrender consideration to its payment. *Held*, that plaintiff's guardian had all the power required to agree with the defendant as she did, even without recourse to the surrogate; the guardian could agree to waive notice and demand of payment, and defendant was not bound to maintain the policy upon the non-payment of the amount of the loan, which equaled its surrender value.

*Clare* v. *Mutual Life Ins. Co.*, 128 App. Div. 908, affirmed.

(Argued March 27, 1911; decided April 25, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 23, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles W. Strong* and *Fred S. Jackson* for appellant. The contract entered into between the guardian and the defendant exceeded to a material degree and in a material respect the contract authorized by the order of the surrogate and never received the approval of the surrogate. (*Matter of Bartsch*, 60 Misc. Rep. 272; *Hardy* v. *Citizens' Nat. Bank*, 61 N. H. 34; *Poultney* v. *Randall*, 9 Bosw. 232; Jones on Pledges & Coll. Sec. § 61; Woerner on Guardianship, 172, 173, § 53; Schouler on Dom. Rel. [4th ed.] § 344; *Rollins* v. *Marsh*, 129 Mass. 166; *Moore* v. *Hazelton*, 9 Allen, 104.) The surrogate had no power to authorize, nor had the guardian any right or power to enter into any contract waiving the infant's common-law and statutory right to demand of payment and notice of sale. (*Toplitz* v. *Bauer*, 161 N. Y. 325; *Stenton* v. *Jerome*, 54 N. Y. 480; *Nelson* v. *Little*, 2 N. Y. 443; *Williams* v. *U. S. T. Co.*, 133 N. Y. 660; *Vickers* v. *Battershall*, 84 Hun, 496; *Hughes* v. *Harlan*, 166 N. Y. 427; *Mooney* v. *Byrne*, 163 N. Y. 86; *Macauley* v. *Smith*, 132 N. Y. 524; *Sherman* v. *Wright*, 39 N. Y. 227; *Howell* v. *Mills*, 53 N. Y. 322; *Losey* v. *Stanley*, 147 N. Y. 560.) The guardian had no power to waive or contract away the infant's right or equity of redemption in the pledged property and the contract made by her in an attempt so to do was against public policy and, therefore, void. (*Thompson* v. *Dolliver*, 132 Mass. 103; *King* v. *Van Vleck*, 109 N. Y. 363; *First Nat. Bank* v. *Hall*, 22 App. Div. 356; *Griggs* v. *Day*, 136 N. Y. 152; *Bryan* v. *Baldwin*, 52 N. Y. 232; *Duncomb* v. *N. Y. & H. R. R. Co.*, 84 N. Y. 190.)

*Maulsby Kimball* for respondent. The guardian had power and authority to surrender the policy and apply the proceeds to the benefit of the infant even without a court order, and had the right to agree upon the terms on which such surrender should be had. (*Fields* v. *Schieffelin*, 7 Johns. Ch. 150; *Tuttle* v. *Heavy*, 59 Barb. 334; *Chapman* v. *Tibbits*, 33 N. Y. 289; *Maclay* v. *E. Life Assur. Co.*, 152 U. S. 499; *Lawrence* v. *Morrison*, 68 N. C. 182; *Lamar* v. *Micon*,

112 U. S. 452; *Humphrey* v. *Buisson*, 19 Minn. 221; *Engle* v. *Ortman*, 3 Ohio Dec. 237; *Matter of Clement*, 17 Wkly. Dig. 431; *Matter of Ralph's Estate*, 9 N. Y. Supp. 295; *Williams* v. *Clarke*, 82 App. Div. 199.) No sound distinction is to be drawn between a sale or surrender by a guardian of an infant's insurance policy or a mortgage or assignment of the same as collateral. It was the guardian's duty to apply the infant's personal property to his education and maintenance in the manner most advantageous to the infant under all the circumstances existing. (Jessup on Surr. Pr. § 1033; *Hyland* v. *Baxter*, 98 N. Y. 610; *Matter of Clement*, 17 Wkly. Dig. 431; *Matter of Hoga's Estate*, 134 Mich. 361; *Gott* v. *Culp*, 45 Mich. 265; *Matter of Ward*, 49 Misc. Rep. 181; *Matter of Forstel*, 8 App. Div. 397; *Hovell* v. *Noll*, 10 Misc. Rep. 546; *Matter of Miller*, 34 Hun, 267.) The surrogate had ample power and jurisdiction to grant the order authorizing the loan in question, borrowing upon the policy and entering into the agreement of January 27, 1901. The guardian acted within the authority granted her by said order. (Code Civ. Pro. §§ 2472, 2846; *Hyland* v. *Baxter*, 98 N. Y. 610; *Matter of Bolton*, 159 N. Y. 129; *Matter of Wagner*, 81 App. Div. 183; *Matter of Becker*, 28 Hun, 207; *Cornell* v. *Hayden*, 24 Wkly. Dig. 1; *Matter of Hynes*, 105 N. Y. 560.)

GRAY, J. The action is upon a policy of insurance issued by the defendant, which insured the life of the plaintiff's mother for his benefit in the sum of $3,000. The defense to the action was, principally, that the policy had been cancelled and all obligation of the defendant thereunder satisfied. Findings were made by the trial court, in its decision of the issues, which were based upon a stipulation of the parties as to the main facts. In substance, these were the facts as found. Mrs. Clare, the plaintiff's mother, in January, 1900, took out a paid-up policy of insurance, whereby the defendant promised to pay the sum of $3,000 to the plaintiff, if living at her death, and, if not living, then, to her executors, administrators, or assigns. She died in December, 1906, from a cause not

excepted in the policy. In January, 1901, a year after taking out the policy, she had applied to the surrogate of the county of New York for authority to assign and pledge it as security for a loan of money. In her application, she stated that the plaintiff was an infant over fourteen years of age; that she had been appointed his general guardian; that his only property consisted in his interest in the policy; that she was in straitened circumstances and unable to educate her son as a dentist without outside aid; that the defendant had agreed to loan to her the sum of $617 upon the policy, and that that sum would suffice for the necessary maintenance and education of her son. The application was granted by the surrogate and Mrs. Clare was authorized, as general guardian, to assign, surrender and pledge the plaintiff's interest in the policy and to use the amount received for his benefit. The making of the loan by the defendant was conditioned upon her obtaining such an order. Thereafter, Mrs. Clare made an agreement with the defendant, in the usual and only form that the latter used in loaning upon its policies, whereby the latter agreed to loan the sum of $617 for one year and she assigned her interest, individually and as guardian, in the policy as collateral security for the payment of the loan. The company, in the event of default in the payment of the loan when due, was authorized "without notice and without demand for payment to cancel said policy and apply the customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, namely $617, to the payment of said loan with interest." The loan was not repaid on the date fixed and the finding is that "thereupon this defendant surrendered said policy and applied the customary cash surrender consideration then allowed by the company for the surrender of similar policies, which was at that time the sum of $617, to the payment of said loan and thereupon canceled said policy." It was found that Mrs. Clare and the defendant had acted, each, in good faith. The plaintiff came of age in 1906, some months before his mother died. At the time of making the

loan, she was a widow, thirty-eight years of age.  Upon these
facts, the trial court reached the conclusion that the plaintiff
had no legal claim against the defendant upon the policy and
that his complaint should be dismissed on the merits.  The
judgment thereupon entered was unanimously affirmed at the
Appellate Division and upon this appeal the plaintiff contends,
as he did below, that his guardian had no right to enter into
such an agreement and that the surrogate had no power to
authorize it.  If the determination of the issue between the
parties were to depend, solely, upon the surrogate's power to
authorize the plaintiff's mother and guardian to enter into the
agreement, I should have no doubt but that it was ample.
The Surrogate's Court is empowered by the statute to direct
and control the conduct of the guardians of infants and, upon
the petition of the general guardian, to make an order directing
the application of the infant's property to his support and
education out of income, or, if the income is inadequate, out
of principal.  (Code Civ. Proc., secs. 2472, 2846.)  But it is
not necessary to decide the question whether the Surrogate's
Court had the power to authorize the agreement.  It was not
essential that the plaintiff's guardian should have been author-
ized by its order to enter into it.  In applying to the surro-
gate, she complied with the defendant's request and, doubt-
less, that originated in the cautious policy of defendant's
officers.  As the general guardian, she had ample authority
to make this disposition of the personal property of her ward.
It was a matter within the province of her judgment and if its
exercise was with due regard for her ward's interest, it was
justified.  As the facts are established, they exhibit such a
case.  We have the necessities of the youth desiring to be
educated in a profession ; the existence of but one source
from which to derive pecuniary aid, in his contingent interest
in the policy upon his mother's life ; her inability to provide
means and her willingness to surrender her own interest in the
policy ; a loan, presumably, from the only person willing to
lend upon the present value of the policy upon its pledge, and
a loan agreement, in the form commonly used by the defend-

ant in such cases, securing repayment by a provision that the surrender value of the policy might be resorted to in satisfaction of the loan.    With these facts, and with the parties acting in perfect good faith, the act of the guardian could not well be questioned and, certainly, the defendant subjected itself to no liability to the infant.    Mrs. Clare, as the general guardian, had the same powers that a testamentary guardian would have had and they extend, not only to the custody, but to the management of the ward's personal estate.    ( *Wuesthoff* v. *Germania L. Ins. Co.*, 107 N. Y. 580 ; *Chapman* v. *Tibbits*, 33 ib. 289 ; Dom. Rel. Law, sec. 82.)    The right of the guardian to resort to the principal of the ward's estate, if to the latter's advantage, has long been recognized.    (*Matter of Bostwick*, 4 Johns. Ch. 100, 105 ; *Hyland* v. *Baxter*, 98 N. Y. 610.)    The legal control of the guardian over the personal estate of the infant is absolute, within the bounds of a discretion guided by an honest judgment of what his best interests require.    In *Field* v. *Schieffelin*, (7 Johns. Ch. 150), the guardian sold and assigned a bond and mortgage, belonging to his ward's estate, before the bond was due and the chancellor upheld the transaction as within the exercise of the guardian's discretion. Holding the discretion to be duly exercised if money was wanting for the better maintenance and education of the ward, " or for any purpose whatever, connected with the faithful discharge of the trust," he observed that " the necessity or expediency of the measure rested entirely in the judgment and discretion of the guardian.    He was, as between him and the purchaser, the proper and the exclusive judge of that expediency.    *    *    *    Though it be not in the ordinary course of the guardian's administration, to sell the personal property of his ward, yet he has the legal right to do it, for it is entirely under his control and management, and he is not obliged to apply to this court for direction in every particular case." (p. 153.)    The authority of this case was followed by our Supreme Court, in *Tuttle* v. *Heavy*, (59 Barb. 334), and by the United States Supreme Court, in *Maclay* v. *Equitable Life Assur. Society.*, (152 U. S. 499) ;

32

a case much in point.   In *Chapman* v. *Tibbits*, (*supra*), this general power of the guardian to manage the personal estate of the ward was recognized, as distinguished from the limitations upon its exercise in relation to the real estate.   The Code of Civil Procedure regulates the power and authority of the Surrogate's Court, with respect to general guardians, by the manner of their exercise by the Court of Chancery.   (Sec. 2821.) Whether, therefore, we regard the nature of the office of a general guardian under our statute, or the rule of the Court of Chancery, as asserted by the chancellor, in the case cited, there is no difficulty in concluding that this plaintiff's guardian had all the power required to agree with the defendant as she did, without recourse to the surrogate.   She had that legal control of the infant's personal estate which, in the absence of bad faith, was indisputable.   She was accountable for her management; but, as to third persons, her acts were valid, if not affected by any collusive fraud.

The question of the surrender value of the policy is not here.   The finding upon the subject is explicit and is based upon the stipulation and there is no request to find otherwise. Nor is there any doubt but what the guardian could agree to waive notice and demand of payment.   The subject of the contract was a non-negotiable chose in action and not a chattel, and the plaintiff's interest in the policy was a peculiar species of property.   The defendant was not bound to maintain the policy, upon the non-payment of the amount of the loan; which equalled its surrender value.   The effect of the agreement was to provide for a method of realizing upon the policy and there can be no legal objection to such an agreement by the guardian.   It is always competent for parties to agree between themselves that, in a transaction of loan, notice and demand may be dispensed with.

I think that the judgment was right and that it should be affirmed.

Cullen, Ch. J., Haight, Vann, Willard Bartlett, Chase and Collin, JJ., concur.

Judgment affirmed, with costs.