BRANONER v. TRAITEL MARBLE CO.

(Supreme Court, Appellate Division, First Department.   May 19, 1911.)

1. MASTER AND SERVANT (§ 294*)—INJURIES TO SERVANT—FELLOW SERVANTS —INSTRUCTIONS.

   Where the sudden starting of a motor which led to plaintiff's injury in a mill was due to the carelessness of the sawyer, who was plaintiff's fellow servant, and the court charged that plaintiff could not recover if his injuries were due to the negligence of a fellow employé in applying power to the saw, but later, in response to a request to charge concerning defendant's liability for the negligence of a coemployé, stated that he had purposely refrained from amplifying his charge as to a fellow servant, his refusal to charge a request that, if the accident was due to a failure of plaintiff's fellow employés to sufficiently loosen the saw before turning on the power, the verdict must be for defendant, was error.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 294.*]

2. TRIAL (§ 127*)—INJURIES TO SERVANT—INSURANCE BY MASTER.

   In an action for injuries to a servant, it was error to permit the fact to be brought out that the case was being defended by a casualty company by which the master had been insured.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 275; Dec. Dig. § 127.*]

Appeal from Trial Term, New York County.

Action by Louis Branoner against the Traitel Marble Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals.   Reversed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Theodore H. Lord, for appellant.

Thomas W. Churchill, for respondent.

SCOTT, J.   Defendant appeals from a judgment entered upon a verdict and from an order denying a motion for a new trial.   The action is for damages for a personal injury.

[1] The defendant was engaged in the marble business, which involved the cutting of blocks of marble into slabs by means of saws operated by electrical machinery, the power being furnished by a boiler and steam engine.   Plaintiff was the assistant engineer, his tour of duty covering the nighttime.   In the room next to the one in which he was employed was the machinery operating the saws, and it was a part of his duty to assist the sawyer, or man operating the saws, if called upon to do so.   It was while so engaged that plaintiff was injured.   The evidence concerning the operating of the machinery and the causes that led to plaintiff's being called upon to assist is extremely technical, and much of it has no real bearing upon the case.   The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

result of it is that the sudden starting of the motor, which led to the blowing out of a fuse and the extinguishment of the lights, and which so startled plaintiff that he fell, was due to carelessness or ineptitude on the part of the sawyer, who was unquestionably a fellow servant. For some reason the learned trial justice gave but slight attention to this feature of the case. It is true that he did say, at the commencement of his main charge, that plaintiff could not recover if his injuries were due to the negligence of a fellow employé in applying power to the saw. This, however, did not cover the case, for which there is warrant in the testimony, of negligence by a coemployé in not clearing the saws before trying to start them up. Later, when plaintiff asked for a charge respecting defendant's liability for the negligence of a coemployé, the court said:

"I have purposely refrained from amplifying my charge as to a fellow servant."

And still again, when defendant's counsel requested the perfectly proper charge that:

"If the accident was due to the failure of the plaintiff's fellow employés to sufficiently loosen the saw before turning on the power, the verdict must be for the defendant"

—the request was refused and an exception taken. Under these conditions there was practically withdrawn from the jury all consideration of that question in the case which, in our opinion, was its most important, if not its controlling, feature. If that question had been properly presented, we cannot believe that the case would have resulted as it has.

[2] There is another matter which assumed a prominent place in the trial, and which probably served in some measure to induce what certainly appears to be a large verdict. We refer to the bringing out of the fact that the action was being defended by a casualty company. That this fact was elicited in response to an inquiry by the court does not serve to mitigate, but rather to enhance the wrong, especially in view of the fact that the court pointedly referred to the subject in its charge. Both this court and the Court of Appeals have frequently pointed out the unfairness and impropriety of permitting such a fact to be proven; the latter court saying, in a very late case:

"Evidence that the defendant in an action for negligence was insured in a casualty company, or that the defense was conducted by an insurance company, is incompetent, and so dangerous as to require a reversal, even when the court strikes it from the record and directs the jury to disregard it, unless it clearly appears that it could not have influenced the verdict." Simpson v. Foundation Company, 95 N. E. 10.

In view of these errors, it is unnecessary to consider the evidence in detail, or to discuss any other question suggested by the record.

The judgment and order appealed from must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.