PERCY TOOMBS and Others, Plaintiffs, *v.* TEXAS OIL COMPANY, Defendant.

City Court of New York, Bronx County, December 5, 1932.

*Bernard Budnick,* for the plaintiffs.

*Michael A. Hayes,* for the defendant.

DONNELLY, J. The courts have repeatedly censured the putting of questions which suggest to the minds of the jurors that the defendant was insured in a casualty company, and have reversed judgments and granted new trials on that ground alone. (*O'Brien* v. *Hencken & Willenbrock Co.,* 172 App. Div. 142, 143, and cases there cited.) (See, also, *Dietz* v. *Dinkel,* 230 id. 699, 700.) In most of these cases the decisions were based upon a finding very similar to that in *Rodzborski* v. *American Sugar Refining Co.* (210 N. Y. 262, 268),

where it was held that no other assumption could be made than that plaintiff's counsel knew the answer his question would elicit.

During the examination by the attorney for the plaintiff of Dr. H. Kubel, who had treated the plaintiff Percy Toombs and who was called as a witness for the defendant, the following occurred: " Q. Had anyone talked to you about this case, doctor? A. Yes. Q. Someone from the office of the Texas Oil Co. came to see you? A. No. Q. Who spoke to you? A. Mrs. Toombs. Q. From the Texas Oil Co.? A. No. Q. Who asked you to come here? A. One of the gentlemen from the United States Casualty. Q. Did they talk to you about this case? "

It is impossible to conclude that this line of examination was guileless. It appears to have been adopted for no other purpose than to get before the jury the fact that the defendant was insured. The witness had testified that he had talked about the case with the plaintiff's wife. He had answered twice that no one from the defendant's office had spoken to him about it. Plaintiff's attorney, who is no tyro in the trial of negligence actions, must have been perfectly conscious of the danger of pursuing the subject further. That he intended to continue it after the witness had testified that he had been asked to come to court by " one of the gentlemen from the United States Casualty " is apparent from his next question: " Q. Did they talk to you about this case? "

In *Simpson* v. *Foundation Co.* (201 N. Y. 479, 490) the court said: " If the answers were unexpected, as claimed, it was the duty of the plaintiff's counsel to move to strike out the evidence and to ask the court to instruct the jury to disregard it. * * * A prompt withdrawal of the evidence by the counsel for the plaintiff would go farther toward correcting the evil than any motion made by the attorney for the defendant * * *. Evidence that the defendant in any action for negligence was insured in a casualty company, or that the defense was conducted by an insurance company, is incompetent and so dangerous as to require a reversal even when the court strikes it from the record and directs the jury to disregard it, unless it clearly appears that it could not have influenced the verdict." In the instant case, it cannot be said that the reference to the casualty company may not have induced the verdict for the plaintiff Percy Toombs for $1,500. Each of the three plaintiffs demanded damages for personal injuries. None of them was awarded a penny for such injuries, except Percy Toombs. The accident happened on January 25, 1929. Six months later the plaintiff Percy Toombs served a bill of particulars in which there is not the slightest intimation of any injury to his right foot which required amputation of the fourth toe. It was

not until October 3, 1932, exactly three weeks before the trial, that this claim was made. The medical testimony in support of this claim is, to say the least, negligible. Dr. Edward Adams was called by the plaintiff. Dr. Adams has been practising his profession for thirty-four years. He testified as a part of his qualifications that he has written books on surgery of the feet and that he examined the plaintiff on October 8, 1932, after the fourth toe on his right foot had been amputated. This witness was apparently very reluctant to testify that the condition of Toombs' foot, as he found it at the time of his examination, had been produced by a traumatic injury. He testified that it *could* be attributed to such an injury; that there may be a great many causes, but that he did not know what caused it. The only other testimony adduced by the plaintiff in support of his claim that the injury to his toe and its subsequent amputation were directly traceable to the accident was that given by the plaintiff and his wife. The defendant endeavored to show, by Dr. Kubel, that while Percy Toombs was at the Lincoln Hospital for treatment, he had a conversation with him, in which the plaintiff said that while in a subway train he had his toes stepped upon and that later he had developed an infection in that toe. The doctor also testified that the plaintiff had never told him of the accident in January, 1929, resulting in an injury to the toe. Under ordinary circumstances, the evidence thus presented left a question of fact for the jury with whose finding in favor of the plaintiff no trial judge should interfere. But on the authorities cited *ante*, and in the circumstances surrounding the manner in which it was brought to the jurors' attention that the defendant was insured in a casualty company or that its defense was being conducted by a casualty company, I am constrained to hold that the defendant's motions to set aside the verdicts in favor of the plaintiffs Percy Toombs and Guido Schiaroli must be granted, and it is so ordered. Exception to plaintiffs. Ten days' stay of execution and thirty days to make and serve a case allowed.